Filed 12/23/21  In re A.U. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re A.U. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ERICA U.,<br><br>    Defendant and Appellant. | G060569<br><br>(Super. Ct. Nos. 19DP1583<br> & 19DP1584)<br><br>O P I N I O N |

        Appeal from a judgment of the Superior Court of Orange County, Antony C. Ufland, Judge.  Affirmed in part and remanded.

        Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Deborah B. Morse, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for the Minors.

\*　　　\*　　　\*

## INTRODUCTION

We deal here with the question of whether a juvenile dependency court's failure to follow its "affirmative and continuing duty to inquire" whether a subject minor "is or may be an Indian child" under the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) constitutes reversible error. (See Welf. & Inst. Code, § 224.2, subd. (a).)[1] ICWA was enacted to give Indian tribes concurrent jurisdiction with state courts in child custody proceedings involving Indian children. (See *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740 (*Benjamin M.*).) Under federal regulations implementing ICWA, as well as California state statutes, dependency courts must ask participants whether they know or have reason to know a subject minor is an Indian child and child protective agencies must conduct adequate inquiries on the matter. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) This appeal concerns two minors born to appellant Erica U. by two different fathers. Our record lacks evidence showing the proper inquiry was made. SSA argues this failure was not prejudicial because Erica offered no evidence, even on appeal, that either child is subject to ICWA, and there is no evidence in the record that ICWA applies. We sympathize with that position but believe we are bound to remand the matter for further proceedings in compliance with ICWA while conditionally affirming the juvenile court's judgment terminating Erica's parental rights.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

**FACTS**

Erica has ongoing and unresolved mental health and substance abuse problems.[2]  She also has three children who were declared dependents under section 300 – A.U., now 12, Y.U., now 7, and a third younger child, whose proceedings were not appealed.  A.U.'s biological father is Francisco D. and Y.U.'s alleged father is Pedro T.

SSA filed an application for a protective custody warrant as to the three children on December 19, 2019.  The application stemmed from an early October 2019 incident in which A.U. became upset at school because of his mother's behaviors at home.  SSA's investigation was initiated the following day, resulting in proceedings as to all three children.

In the early stages of the investigation, SSA had been unsuccessful in reaching Francisco, and after the October 2019 incident, A.U. went to San Diego to live with Francisco's mother, Delia.  SSA was later able to make contact with Francisco and he appeared at the January 23, 2020 pretrial conference.  He submitted to the court a parental notification of Indian status form (California Judicial Council form ICWA-020) ("parental notification form") stating he had no Indian ancestry as far as he knew, and the court accepted the form.

Pedro, on the other hand, was never located.  SSA records showed Erica claimed in 2017 that he was deported and she had no contact with him.  His last known address was the Santa Ana home of his parents, Yolanda and Pedro Sr., with whom Y.U. had lived since birth.[3]

SSA included Indian child inquiry attachments (California Judicial Council form ICWA-010(A)) in its dependency petitions for A.U. and Y.U.  Both documents

---

[2]     The reasons for the minors' dependency proceedings are largely irrelevant to the appeal itself, and so, out of respect for the dignity and privacy of those involved, we only provide details where appropriate for context.

[3]     Yolanda and Pedro Sr. had never gained legal custody of Y.U. but Erica allowed the child to live with them.

stated inquiries had been made and the children had no known Indian ancestry. But SSA never provided details on what this inquiry entailed. Its detention report filed on December 23, 2019, with respect to both children simply stated "[t]he mother denied any Native American ancestry at this time."

At the detention hearing for both children on December 24, 2019, the juvenile court deferred any findings under ICWA because Erica had not appeared. The children were released to their respective paternal grandparents' custody for temporary placement.

Erica first made an appearance in the case on March 27, 2020, but our record shows no evidence of an inquiry by the juvenile court under ICWA, nor is there evidence she was offered, signed, or submitted a parental notification form at the hearing.[4] She denied the petition's allegations through her appointed counsel.

A jurisdictional and dispositional hearing occurred as to the children on May 15, 2020, at which time the court sustained the allegations in SSA's petition. Erica testified at the hearing, but was never asked about the children's potential Native American ancestry, either through her or through their respective fathers.

SSA's status report filed in preparation for the November 2020 six-month pre-permanency planning review hearing showed ICWA findings were still deferred as of that point. In its status report dated February 11, 2021, SSA indicated it had attempted two days prior to inquire with Erica about ICWA, but had received no response from her. Erica was not participating in her case plan services and had not been consistently visiting with the children, so SSA recommended terminating reunification services. The juvenile court did so and set a selection and implementation hearing for July 28, 2021. SSA made attempts to locate and notify Pedro of the hearing but was unsuccessful.

---

[4] There was no transcript of the March 27 hearing because no court reporter was present.

Because SSA recommended adoption as the children's permanent plan, they conducted caregiver assessments of both sets of paternal grandparents, and found they were all from Mexico. Yolanda and Pedro Sr. traveled to Mexico with Y.U. occasionally and visited relatives there.

Erica failed to appear at the selection and implementation hearing. The juvenile court refused to continue the hearing and terminated the parental rights of Erica, Francisco, and Pedro, selecting adoption by the paternal grandparents as the children's permanent plan.

## DISCUSSION

The sole issue Erica raises on appeal is ICWA compliance. "'The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.]' (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.) When, as is the case here, the facts are undisputed, we review independently whether the requirements of ICWA have been satisfied. [Citation.]" (*In re A.M.* (2020) 47 Cal.App.5th 303, 314.) Here, we cannot find any indication the juvenile court ever determined whether ICWA applied so we must reverse.

"The juvenile court and [the agency] have 'an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child.' (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9, 11–12 (*Isaiah W.*).) This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.* (2020) 55 Cal.App.5th 558, 566 (*D.F.*).) "The *duty to inquire* whether a child is an Indian child begins with 'the initial contact,' i.e., when the referring party reports child abuse or neglect that jumpstarts [the agency's] investigation. (§ 224.2, subd. (a).) [The agency's] initial duty to inquire includes asking the child, parents, legal guardian, extended family members, and others who have an interest in the child whether the child is, or may be, an Indian child. (*Id.*, subd. (b).) Similarly, the juvenile court

5

must inquire at each parent's *first* appearance whether he or she 'knows or has reason to know that the child is an Indian child.' (*Id.*, subd. (c).). The juvenile court must also require each parent to complete Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court[fn], rule 5.481(a)(2)(C).) The parties are instructed to inform the court 'if they subsequently receive information that provides reason to know the child is an Indian child.' (25 C.F.R. § 23.107(a); § 224.2, subd. (c).)" (*D.F.*, *supra*, 55 Cal.App.5th at p. 566.)

These procedures do not appear to have been rigorously observed in this case. The juvenile court deferred ICWA findings at the detention hearing and then did not return to the matter for the remainder of the proceedings. In fact, aside from accepting Francisco's parental notification form at the January 23, 2020 pretrial hearing, the juvenile court never mentioned ICWA again. It never ordered Erica to complete a parental notification form, and, according to the record before us, never asked her – even when she appeared in court – whether she had reason to know the children were Indian children.

SSA's only documented inquiry was to ask Erica at the very beginning of their investigation if she had Native American ancestry.[5] But SSA was unable subsequently to make contact with her to conduct a follow-up inquiry regarding ICWA, and it never seemingly spoke to her mother on the subject, although her mother was interviewed.

SSA never made contact with Pedro and he never appeared. No inquiry was made of Pedro's parents, Yolanda and Pedro Sr., even though SSA was in contact with them – and indeed, recommended them to adopt Y.U. ICWA compliance seems not to have been on anyone's mind, and the statutory scheme requires that it be.

---

[5] We think the paucity of detail in the record about this inquiry must be held against SSA, as it was required to "include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes" on an ongoing basis. (See Cal. Rules of Court, rule 5.481, subd. (a)(5).)

SSA argues any error was not prejudicial because such an inquiry would have been futile. Erica initially denied Native American ancestry and all paternal grandparents were from Mexico. According to SSA, Erica has not pointed to any evidence showing ICWA would have been applicable in this case even if an initial inquiry were properly made. We take those points but don't believe they allow us to disregard the statutory mandate of thorough inquiry so clearly stated by the legislature.

As our high court has said, the ICWA-related inquiry and notice procedures "make clear that Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children. [Citation.] ICWA's notice requirements are 'intended to protect the interests of Indian children and tribes despite the parents' inaction.' [Citations.]" (*Isaiah W.*, *supra*, 1 Cal.5th at p. 13.) They are "as much about effectuating the rights of Indian tribes as they are about the rights of the litigants already in a dependency case." (*Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 740-741.) As such, we agree with our sister court that reversal is required "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) As is evident from the facts in this case, SSA failed to access such readily obtainable information from Erica's mother and Pedro's parents.

We also find SSA's logic on the issue of prejudice faulty, at least as it relates to Y.U. There is no way to know what Pedro might say about his ancestry because SSA has never been able to find him. His parents may hail from Mexico but SSA provides us no authority indicating this fact alone forecloses potential tribal membership. Accordingly, we must conditionally affirm the judgment terminating parental rights and remand for purposes of further proceedings to comply with ICWA and related statutes and rules.

## DISPOSITION

The section 366.26 order is conditionally affirmed.  The matter is remanded to the juvenile court for compliance with the inquiry, and if necessary, notice provisions of ICWA and related California law.  If there is no Indian ancestry, our affirmance resolves the case.


BEDSWORTH, ACTING P. J.

WE CONCUR:


GOETHALS, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8