Filed 7/26/22  In re E.L. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re E.L., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D079910 |
| Plaintiff and Respondent, | (Super. Ct. No. J520379B) |
| v. | |
| W.L., | |
| Defendant and Appellant. | |

1

APPEAL from an order of the Superior Court of San Diego County, Michael J. Imhoff, Commissioner. Conditionally reversed and remanded with directions.

Paul Adam Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Emily Harlan, Deputy County Counsel, for Plaintiff and Respondent.

W.L. (Father) appeals from a dispositional order in the Welfare and Institutions Code section 300[1] dependency proceedings for his infant daughter, E.L. His sole contention is that the San Diego County Health and Human Services Agency (Agency) and the juvenile court did not comply with their initial inquiry duties under the federal Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and section 224.2. The Agency agrees with Father's contention and concedes that we should conditionally reverse the dispositional order and remand the matter for the limited purpose of compliance with ICWA and section 224.2. Based on our review of the record, we agree with Father and the Agency. Accordingly, we will conditionally reverse the dispositional order and remand the matter with directions for the limited purpose of compliance with ICWA and section 224.2.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

In October 2021, the Agency filed a section 300, subdivision (b)(1) petition for then one-week-old E.L., alleging that she and her mother, S. S.-H. (Mother), tested positive for amphetamine and opiates at E.L.'s birth. In its detention report, the Agency stated that Mother told its social worker that neither she nor Father had any Native American heritage. The Agency also reported that in May 2020 the juvenile court found that ICWA did not apply to the dependency case of M.L., E.L.'s older sibling. The Agency stated that it had spoken with E.L.'s paternal grandmother in Florida, her maternal grandfather in Pennsylvania, and her paternal great-aunt who was then M.L.'s caregiver, but there is no indication that it asked any of them about any possible Native American heritage. The Agency recommended that the juvenile court make a finding that ICWA did not apply to E.L.'s case.

At the detention hearing on October 12, the court found that ICWA did not apply to E.L.'s case, stating that "[n]either [M]other nor [F]ather are claiming [N]ative American heritage." The court then found the Agency had made a prima facie showing in support of its petition and detained E.L. in out-of-home care.

In its jurisdiction and disposition report, the Agency stated that ICWA did not apply to E.L.'s case, noting that Mother and Father had denied that any of their family members were a member of a tribe. The Agency also stated that its social workers had spoken with the paternal grandmother, the maternal grandfather, and the paternal great-aunt regarding placement of

2    Because Father's sole contention on appeal challenges the compliance by the Agency and the juvenile court with their ICWA initial inquiry duties, we limit our discussion of the facts and procedural history to information necessary to determine that issue.

3

E.L., but there is no indication that it asked any of them about any possible Native American heritage. Although the maternal grandfather did not want placement of E.L. with him, he gave the Agency contact information for a maternal cousin in Colorado who may have wanted placement of her.

At the jurisdiction hearing on November 1, the court found that the petition's allegations were true and declared E.L. a dependent of the court. At the hearing, the court did not address, or make any findings regarding, the application of ICWA.

At the contested disposition hearing on December 7, the paternal grandmother appeared telephonically and the maternal grandfather appeared by video conference. However, the court did not make any inquiries of them regarding any possible Native American heritage or make any findings regarding the application of ICWA. The court found, by clear and convincing evidence, that E.L. should be removed from Mother's custody and that it would be detrimental for her to be placed with Father (who was then in custody). The court then ordered that E.L. be placed in a confidential licensed foster home.

On January 11, 2022, Father filed a notice of appeal, challenging the December 7, 2021 dispositional order.[3]

---

[3] Mother has not appealed the dispositional order.

DISCUSSION

I

*ICWA Inquiry Duties*

Congress enacted ICWA to address concerns regarding the separation of Native American children from their tribes through adoption or foster care placement. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*).) ICWA provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe" of the pending proceedings and their right to intervene. (25 U.S.C. § 1912(a); see also, *Isaiah W.*, *supra*, at p. 8.) California law also requires such notice. (§ 224.3, subd. (a) ["If the court [or] a social worker . . . knows or has reason to know . . . that an Indian child is involved, notice pursuant to [ICWA] shall be provided for hearings that may culminate in an order for foster care placement, termination of parental rights, preadoptive placement, or adoptive placement . . . ."].) Both ICWA and California law define an "Indian child" as a child who is either a member of an Indian tribe or is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe. (25 U.S.C. § 1903(4); § 224.1, subds. (a), (b).)

Effective January 1, 2019, sections 224.2 and 224.3 were enacted, setting forth California's current ICWA inquiry and notice requirements for juvenile dependency cases. (Stats. 2018, ch. 833, §§ 5, 7.) Under sections 224.2 and 224.3, the Agency and the juvenile court are generally obligated to: (1) conduct an initial inquiry regarding whether there is a reason to believe the child is an Indian child; (2) if there is, then further inquire whether there

5

is a reason to know the child is an Indian child; and (3) if there is, then provide ICWA notice to allow the tribe to make a determination regarding the child's tribal membership. (See *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048-1052; *In re Austin J.* (2020) 47 Cal.App.5th 870, 882-885.)

Specifically, section 224.2, subdivision (a) imposes on the juvenile court and the Agency "*an affirmative and continuing duty to inquire* whether a child for whom a petition under Section 300 . . . may be, or has been filed, is or may be an Indian child[.]" (Italics added.) Section 224.2, subdivision (b) establishes the Agency's duty of initial inquiry, providing:

> "If a child is placed into the temporary custody of [the Agency] . . . , [the Agency] . . . has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, *extended family memb*ers, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (Italics added.)

Section 224.2, subdivision (e) imposes a duty of further inquiry, providing: "If the court [or] social worker . . . has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is a reason to know that the child is an Indian child, the court [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable." Before the juvenile court can find that ICWA does not apply to a child's case, it must make a finding that "due diligence as required in this section [has] been conducted." (§ 224.2, subd. (i)(2).)

6

We review a juvenile court's findings that the Agency has made reasonable inquiries regarding a child's possible Native American heritage under ICWA and that the Agency has complied with ICWA's notice requirements, or that no such notice is required, for substantial evidence. (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.)

II

*Noncompliance with ICWA Initial Inquiry Duties*

Father contends, and the Agency agrees, that substantial evidence does not support the juvenile court's finding that ICWA does not apply to E.L.'s case and, in particular, that substantial evidence does not support its implied finding under section 224.2, subdivision (i)(2) that the Agency complied with its initial inquiry due diligence obligations under section 224.2.[4] We agree.

---

[4] To the extent Father's notice of appeal expressly challenged only the December 7, 2021 dispositional order in which the juvenile court did not make any ICWA finding, we construe his appeal as challenging both the October 12, 2021 detention order in which it expressly found ICWA did not apply as well as the December 7 dispositional order in which it impliedly found ICWA continued to not apply, given the affirmative and continuing duties of the Agency and juvenile court to inquire regarding E.L.'s possible Native American heritage. (§ 224.2, subd. (a); see, *Isaiah W., supra,* 1 Cal.5th at p. 15 [because of court's affirmative and continuing duty, parent may challenge order terminating parental rights although parent did not appeal prior dispositional order in which court found ICWA did not apply; court's termination order "necessarily subsumed a present determination of ICWA's inapplicability"].)

Also, contrary to the Agency's apparent belief, we conclude that Father's notice of appeal was timely filed within 180 days after the October 12 and December 7 orders. (Cal. Rules of Court, rule 8.104(a)(1)(C).) The record on appeal does not contain any document showing a notice of entry or filed-endorsed copy of either order was served by either the court clerk or a party which would have triggered a shortened 60-day appeal period per

Father asserts, and the Agency acknowledges, that the Agency's initial ICWA inquiry was deficient because it failed to ask E.L.'s extended family members, including her paternal grandmother, maternal grandfather, and paternal great-aunt about the possibility of her Native American heritage, despite the fact that the Agency had spoken with them on multiple occasions about E.L.'s placement. The Agency's duty to make an initial inquiry into E.L.'s possible Native American heritage applies to "extended family members," which includes at least the paternal grandmother, maternal grandfather, and paternal great-aunt. (§ 224.2, subd. (b).) The Agency concedes, and we agree, it failed to comply with its initial ICWA inquiry duty in this case.

Father further argues, and the Agency agrees, that the juvenile court did not comply with its independent duties under section 224.2, subdivision (c). Under that provision, "[a]t the first appearance in court of each party, the court *shall* ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" and "the court *shall* instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c), italics added.) Although the record shows the paternal grandmother, maternal grandfather, and paternal great-aunt appeared at one or more of E.L.'s dependency hearings, the court did not inquire of any of them whether they knew, or had reason to know, that E.L.

California Rules of Court, rule 8.104(a)(1)(A) or (B). (*Alan v. American Honda Motor Co., Inc.* (2007) 40 Cal.4th 894, 902, 906 [single-document rule requires that clerk's certificate of service by mail attach copy of file-stamped minute order].) In particular, we note that the court clerk's October 20 certificate of service of the October 12 order does not appear to have attached a file-stamped copy of that order as a single document.

was an Indian child and did not instruct them to inform the court if they subsequently received information that provided reason to know E.L. is an Indian child. (§ 224.2, subd. (c).) In particular, the record shows: (1) the paternal grandmother and paternal great-aunt appeared at the initial October 8, 2021 detention hearing; (2) the paternal grandmother and maternal grandfather appeared at the initial November 23 dispositional hearing; and (3) the paternal grandmother and maternal grandfather appeared at the contested December 7 dispositional hearing. Yet, the court did not inquire of any of them at those hearings regarding E.L.'s possible Native American heritage or instruct them that they should inform it if they subsequently received information providing reason to know she is an Indian child. Accordingly, the record shows the court did not comply with its duties under section 224.2, subdivision (c).

Because substantial evidence does not support the juvenile court's express and implicit findings at the detention and disposition hearings that ICWA did not apply to E.L.'s case and that the Agency complied with its initial inquiry due diligence obligations regarding E.L.'s possible Native American heritage, we conclude the court erred by expressly and implicitly finding at those hearings that ICWA did not apply to her case. Furthermore, we conclude the record shows that neither the Agency nor the court complied with their affirmative and continuing duties under section 224.2, subdivision (a) to inquire regarding E.L.'s possible Native American heritage.

We further conclude that those inquiry errors are prejudicial and require conditional reversal of the dispositional order with remand of the matter for the limited purpose of compliance with the inquiry provisions of ICWA and section 224.2. Because the failures in this case concerned the Agency's and court's state statutory duties to inquire regarding E.L.'s

possible Native American heritage, we must reverse the order if the error is prejudicial under the state law standard for prejudicial error. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [miscarriage of justice may be found when court concludes it is reasonably probable result more favorable to appellant would have been reached in absence of error].) As the parties note, there currently is a split of authority among the California courts of appeal regarding how to apply this general state law standard for prejudicial error to juvenile dependency cases in which agencies and/or juvenile courts have failed to satisfy their statutory duties of inquiry regarding a child's possible Native American heritage. (See, e.g., *In re A.R.* (2022) 77 Cal.App.5th 197, 201, 206-207 [agency's failure to conduct ICWA inquiry is per se reversible error and miscarriage of justice]; *In re J.C.* (2022) 77 Cal.App.5th 70, 80 [reversal and remand required because agency's failure to make adequate inquiry made it impossible for parent to show prejudice]; *In re H.V.* (2022) 75 Cal.App.5th 433, 438 [same]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 556 [same]; *In re N.G.* (2018) 27 Cal.App.5th 474, 484 [same]; cf. *In re Antonio R.* (2022) 76 Cal.App.5th 421, 435 (*Antonio R.*) [error is prejudicial if information that could have been obtained from extended family members is likely to be meaningful in determining whether child is an Indian child]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744-745 (*Benjamin M.*) [reversal required where record indicates there was readily obtainable information that was likely to bear meaningfully on question of whether child is an Indian child]; *In re Dezi C.* (2022) 79 Cal.App.5th 769, ___, ___ [2022 WL 2128670 at pp. 1, 4] [failure to comply with duty of initial inquiry is harmless

10

error unless record and any proffer by appellant suggest reason to believe child may be an Indian child]; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1065, 1071 [failure to comply with inquiry duty is harmless error unless appellant makes offer of proof or other assertion of Native American heritage]; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431 [unless appellant makes representation of Indian heritage, there can be no prejudice and no miscarriage of justice requiring reversal].)  The California Supreme Court has yet to address this question or otherwise resolve the current split of authority.

However, for purposes of our disposition of this appeal, we need not, and do not, weigh in on this highly disputed question of the proper standard for prejudicial error in cases in which agencies and/or juvenile courts have failed to satisfy their statutory duties of initial and continuing inquiry under section 224.2.  Rather, we conclude that regardless of the particular standard for prejudicial error applied, there has been a miscarriage of justice in the circumstances of this case based on the failures of the Agency and juvenile court to satisfy their statutory duties of initial and continuing inquiry.  (Cal. Const., art. VI, § 13.)  For example, if we were to apply the apparent "middle ground" standard set forth in *Antonio R.* and *Benjamin M.*, prejudicial error would clearly be shown.  Because neither the Agency nor the juvenile court satisfied their initial inquiry duties, we cannot know what information such inquiries might have revealed regarding E.L.'s possible Native American heritage.  Based on their failures to inquire of E.L.'s extended family members with whom they had contact (e.g., the paternal grandmother, the maternal grandfather, and the paternal great-aunt) regarding her possible Native American heritage, we must presume that there was readily obtainable information from those extended family members that was likely

11

to bear meaningfully on the question of whether there is reason to believe that she is an Indian child under ICWA. (Cf. *Antonio R.*, *supra*, 76 Cal.App.5th at p. 435 [where agency fails to discharge its initial duty of inquiry and juvenile court finds ICWA does not apply, "the error is in most circumstances . . . prejudicial and reversible"]; *Benjamin M.*, *supra*, 70 Cal.App.5th at pp. 745-746.)

## DISPOSITION

The dispositional order issued on December 7, 2021, is conditionally reversed and the matter is remanded to the juvenile court with directions that within 30 days of the remittitur the Agency must file a report demonstrating its compliance with the inquiry provisions of ICWA and section 224.2, subdivision (b) and, if required, conduct further inquiry under section 224.2, subdivision (e). Within 45 days of the remittitur, the juvenile court must conduct a hearing to determine if the Agency's inquiry satisfied its statutory duty of inquiry. The juvenile court has the discretion to adjust these time periods on a showing of good cause.

If neither the Agency nor the juvenile court has reason to believe or to know that E.L. is an Indian child, the order issued on December 7, 2021, shall be reinstated. Alternatively, if after completing the inquiry the Agency or the juvenile court has reason to believe that E.L. is an Indian child, the court shall proceed accordingly.

IRION, J.

WE CONCUR:

HUFFMAN, Acting P. J.

BUCHANAN, J.

13