Filed 1/4/23  In re J.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.B., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>T.B.,<br><br>    Defendant and Appellant. | E079369<br><br>(Super.Ct.No. RIJ119871)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Harry (Skip) A. Staley, Judge.  (Retired judge of the Kern Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Conditionally reversed and remanded.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

T.B. (mother) appeals from a juvenile court's order terminating parental rights to her son, J.B. (the child). Mother contends the matter must be conditionally reversed and remanded because the Riverside County Department of Public Social Services (DPSS) failed to discharge its initial duty of inquiry under the Indian Child Welfare Act (25 U.S.C. § 1901 et. seq.) (ICWA) and related California law (Welf. & Inst. Code,[1] § 224.2). We agree and conditionally reverse.

PROCEDURAL BACKGROUND

DPSS received a referral on December 8, 2020, from hospital staff after mother arrived at the emergency room stating she had a "mental health episode," a possible substance abuse issue, and there was some sort of domestic violence. Mother arrived with the child and his brother, E.B., who were described as being unkempt.[2] Mother tested positive for THC, cocaine, methamphetamine, and amphetamine. She admitted to a history of methamphetamine use and said she had smoked marijuana earlier that day. Mother said she wanted to keep her children, but thought they may be better off in the care of DPSS. A social worker placed the child in protective custody. She also reported that on December 9, 2020, mother denied having any Indian ancestry. The social worker

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2] E.B. is not a subject of this appeal. Therefore, this opinion will focus on the child.

indicated on a Judicial Council Forms, form ICWA-010, that she asked mother, and mother "gave [her] no reason to believe the child is or may be an Indian child."

DPSS filed a section 300 petition on December 11, 2020, as to the child, who was two years old at the time. The petition alleged that he came within section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). The petition included the allegations that mother had unresolved histories of substance abuse and mental illness, engaged in domestic violence, neglected the health and safety of the child, and had an extensive dependency history as to her five other children and failed to reunify with all of them.

The court held a detention hearing on December 14, 2020, and detained the child (and his brother) in foster care. It found that DPSS had conducted a sufficient inquiry regarding the child's Indian ancestry and found that ICWA did not apply.[3]

*Jurisdiction/ Disposition*

The social worker filed a jurisdiction/disposition report on January 6, 2021, recommending that the court sustain the petition, declare the child a dependent, and deny mother reunification services under section 361.5, subdivision (b)(10) and (b)(13). The social worker noted that mother denied Indian ancestry, but later said the maternal great-grandmother may have Indian heritage; however, mother and the child were not enrolled in any tribe.

---

[3] J.B. and E.B. had different fathers. Their whereabouts were unknown, so they could not be interviewed concerning their Indian ancestry.

3

The social worker reported that she contacted the maternal grandmother, C.P., on December 30, 2020, and the maternal grandmother said she wanted the child placed with her. She was currently living with her adult daughter and had custody of two of mother's other children. Consequently, she would not be able to take the child until she moved into her own place in mid-January. The social worker reported that she submitted a parent locator for the child's father.

On January 12, 2021, the social worker filed a first amended petition to add allegations regarding M.P. as the child's father.

On January 25, 2021, the social worker filed an addendum report, adding recommendations to deny M.P. reunification services and set a section 366.26 hearing to implement the plan of adoption. The social worker reported that on January 21, 2021, she contacted the maternal grandmother, who stated her grandfather's mother had an affiliation with the Cherokee tribe; however, the maternal grandmother was unaware if she was registered with the tribe. The maternal grandmother stated that the maternal great-grandmother had been deceased for several years, and she was unaware if she was registered with the tribe. The maternal grandmother further stated that to her knowledge, she and her children were not registered with the tribe; however, she would contact her aunt for more information. She later reported that her aunt, S.A.P., said she did not have any other information but would ask around her family to see if anyone was aware of information concerning Indian ancestry.

On February 3, 2021, DPSS sent a letter to the Eastern Band of Cherokee Indians (the Eastern Band), the Bureau of Indian Affairs (the BIA), the United Keetoowah Band

4

of Cherokee Indians (the United Keetoowah Band), and the Cherokee Nation inquiring about the ICWA status of the child and his brother, E.B. The letter provided the names and birthdates of the child, E.B., mother, E.B.'s father, the maternal grandmother (C.P.), the maternal grandfather (Nathaniel Joseph B.), and the maternal great-grandmother (Dora Lee H.). The letter also provided the name of the maternal great-great-grandmother (Mary Martin K.), but listed her birthdate as unknown. The Cherokee Nation and the Eastern Band responded that the child was not registered or eligible to register as a member, and therefore not considered an Indian child. Specifically, the Cherokee Nation acknowledged the ICWA notice it received with regard to mother and the child and stated it was impossible to determine "Indian child" status without information about one of the biological parents. It then stated that with the limited information provided, it could only verify that mother and the child were not registered citizens of the tribe, and it declared that the inquiry was closed. The United Keetoowah responded only with regard to E.B. and said he was not recognized or eligible as a member.

On March 12, 2021, the court held a contested jurisdiction/disposition hearing. County counsel asked the court to find that ICWA did not apply. The court again found that DPSS had conducted a sufficient inquiry as to whether the child was an Indian child and that ICWA did not apply. The court also found that M.P. was not the father of the child and struck him from the petition. Thus, the social worker filed a second amended petition to remove the references to M.P. The court sustained the second amended petition, declared the child a dependent of the court, and removed him from mother's

5

custody. The court also denied mother reunification services under section 361.5, subdivision (b)(10) and (b)(13) and set a section 366.26 hearing.

*Section 366.26*

On November 4, 2021, the social worker filed a report recommending that the child be continued as a dependent, the permanent plan be adoption, and the court grant a 120-day continuance to assess the maternal grandmother and the maternal aunt, M.T., for permanent placement. The maternal grandmother was interested in adopting the child, and the maternal aunt was interested in adopting E.B. The maternal grandmother and the maternal aunt were currently living together, but the maternal aunt wanted to move elsewhere.

The court held a section 366.26 hearing on November 10, 2021, and the court continued the matter.

The social worker filed a report on December 27, 2021, and continued to recommend adoption as the permanent plan.

The court held a section 366.26 hearing on July 12, 2022. The court found it likely that the child would be adopted and terminated mother's parental rights.

DISCUSSION

<u>DPSS Failed to Comply With its Duty of Inquiry, But the Error Was Harmless</u>

Mother claims the juvenile court's order terminating parental rights should be conditionally reversed and the matter remanded to permit additional ICWA compliance. She contends that DPSS failed to discharge its initial duty of inquiry to contact specified extended family members to inquire about the child's possible status as an Indian child.

6

Mother points out that DPSS did not ask the maternal aunt about the family's potential Indian ancestry, despite communicating with her. Mother also contends that DPSS did not make a meaningful effort to locate and communicate with identified extended family members Nathaniel Joseph B. (the maternal grandfather), Dora Lee H. (the maternal great-grandmother), and Mary Martin L. (the maternal great-great-grandmother), and this failure was prejudicial because they possessed "readily obtainable information likely to bear meaningfully upon" the child's potential Indian heritage. We conclude the matter must be conditionally reversed.

A. *Applicable Law*

ICWA establishes minimum federal standards that state courts are required to follow before they may lawfully place an Indian child in foster care or terminate parental rights to an Indian child. (25 U.S.C. §§ 1902, 1912(a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 7 (*Isaiah W.*); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048 (*D.S.*).) ICWA requires that notice of the state court proceedings be given to Indian tribes "where the court knows or has reason to know that an Indian child is involved, . . ." (25 U.S.C. § 1912(a); see *Isaiah W.*, at p. 8; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 740-741 (*Benjamin M.*).) ICWA's notice requirement, which is also codified in California law (§ 224.3), "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene" in the state court proceeding or exercise its own jurisdiction in the matter. (*Isaiah W.*, at p. 5; see *In re Y.W.* (2021) 70 Cal.App.5th 542, 551.) The tribe has the right to determine whether the child is eligible for membership and, thus, whether the child is an Indian child. (*In re K.T.* (2022) 76 Cal.App.5th 732, 742.)

7

Although "ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child," federal regulations implementing ICWA "require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.' " (*In re Austin J.* (2020) 47 Cal.App.5th 870, 882-883 (*Austin J.*), superseded by statute on other grounds as stated in *In re E.C.* (2022) 85 Cal.App.5th 123, 147; see 25 C.F.R. § 23.107(a) (2022).)

California law imposes a similar duty of inquiry on courts. The juvenile court and CFS have "an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a); see *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9, 11-12.) The Welfare and Institutions Code "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [department's] initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1052; § 224.2.) The agency's duty of inquiry includes asking

8

"extended family members" whether they know or have reason to know that the child is an Indian child.  (§ 224.2, subd. (b).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).)  A juvenile court's finding that ICWA does not apply includes an implicit finding that social workers fulfilled their duty of inquiry.  (*Austin J*., *supra*, 47 Cal.App.5th at p. 885.)

We review a court's ICWA findings for substantial evidence.  (*Austin J*., *supra*, 47 Cal.App.5th at p. 885; *In re Charlotte V*. (2016) 6 Cal.App.5th 51, 57.)  " 'We must uphold the court's orders and findings if any substantial evidence, contradicted or uncontradicted, supports them, and we resolve all conflicts in favor of affirmance.' " (*Austin J.*, *supra*, 47 Cal.App.5th at p. 885.)  Mother, as the appellant, " 'has the burden to show that the evidence was not sufficient to support the findings and orders.' "  (*Ibid*.)

B.  *Mother Did Not Forfeit Her Claim*

DPSS first argues that mother forfeited her challenge to the adequacy of the Department's initial inquiry by not raising the issue below.  DPSS "acknowledges and concedes that a parent's inaction in the Trial Court does not preclude appellate review of the issue of whether or not the ICWA applies."  However, it claims that mother forfeited her right to contest DPSS's failure to comply with ICWA because her challenge is based upon California state law.  " 'ICWA compliance presents a unique situation' in that a

9

parent may raise ICWA compliance issues on appeal even though the parent has no burden to object to ICWA compliance deficiencies in the juvenile court." (*In re N.G.* (2018) 27 Cal.App.5th 474, 483; see also, *Isaiah W.*, *supra*, 1 Cal.5th at p. 13 [" 'the parents' inaction does not constitute a waiver or otherwise preclude appellate review' "].) The inquiry and notice requirements of ICWA serve the interests of the Indian tribes " ' "irrespective of the position of the parents" and cannot be waived by the parent.' [Citation.]  A parent in a dependency proceeding is permitted to raise ICWA notice issues not only in the juvenile court, but also on appeal even where, as here, no mention was made of the issue in the juvenile court." (*In re Justin S.* (2007) 150 Cal.App.4th 1426, 1435.)

C.  *DPSS Failed to Comply With its Inquiry Duty Under Section 224.2*

DPSS's duty to make an initial inquiry into the child's possible Indian ancestry applies to "extended family members," which includes the child's aunt and grandparents. (§ 224.1, subd. (c) ["extended family member" is defined as provided in 25 U.S.C. § 1903]; § 224.2, subd. (b); cf. 25 U.S.C. § 1903(2) [term "extended family member" includes child's aunt and grandparents]; see *In re Y.M.* (2022) 82 Cal.App.5th 901, 909 (*Y.M.*).)  Notably, "extended family member" does *not* include the child's great-grandparents or great-great-grandparents.  (25 U.S.C. § 1903(2).)  Therefore, contrary to mother's claim, DPSS's inquiry duty did not include the child's maternal great-grandmother (Dora Lee H.) or maternal great-great-grandmother (Mary Martin L.).  In any event, as respondent points out, the evidence shows that the maternal great-

10

grandmother was born in 1933 and had been deceased for years; accordingly, it is reasonable to conclude the maternal great-great-grandmother was deceased as well.

However, we conclude that DPSS's ICWA inquiry was deficient with regard to the maternal aunt and the maternal grandfather, since it failed to ask them about the child's potential Indian ancestry. Thus, substantial evidence does not support the juvenile court's implicit finding that DPSS complied with its duty of initial inquiry under section 224.2, subdivision (b). (See *Y.M.*, *supra*, 82 Cal.App.5th at pp. 909-910.)

D. *The Record Does Not Permit Us to Conclude DPSS's Error with Regard to the Maternal Grandfather was Harmless*

At the outset, we note the error asserted by mother "is one of state law error only (i.e., a violation of § 224.2, subd. (b)) and not one of federal law." (*Y.M.*, *supra*, 82 Cal.App.5th at p. 910.) Accordingly, we may reverse the order terminating parental rights "only if the error is prejudicial under the state law standard for prejudicial error." (*Ibid*.) We acknowledge that the standard of prejudice requiring reversal in cases involving ICWA is unsettled in the Courts of Appeal. (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 433 ["Courts of Appeal are divided as to whether a parent must make an affirmative showing of prejudice to support reversal . . . ."].) However, this court recently adopted a standard of prejudice in *Benjamin M.*, *supra*, 70 Cal.App.5th 735 that rejects both an automatic rule of reversal or a rule that places the burden squarely on the parents to show the likelihood of obtaining a more favorable result. (*Id*. at pp. 743-745.) Instead, we explained that "a court must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that

11

there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id*. at p. 744.)

Respondent concedes the record does not indicate the maternal aunt was ever asked about the child's possible Indian ancestry despite DPSS having contact with her. However, respondent argues the error was harmless, as the maternal grandmother reported that, to her knowledge, neither she nor her children (mother and the maternal aunt) were registered tribe members. We agree that the maternal grandmother's knowledge of her own Indian status and that of her children was indicative of the maternal aunt's status, and also that it is reasonable to conclude the maternal aunt had the same information about the child's possible Indian ancestry that the maternal grandmother had. Furthermore, even though the maternal aunt was "readily obtainable," the record does not indicate she had "information that was likely to bear meaningfully upon whether the child is an Indian child." (*Benjamin M., supra,* 70 Cal.App.5th at p. 744.)

With regard to the maternal grandfather, the record indicates his whereabouts were unknown. However, DPSS has the obligation to "make a meaningful effort to locate and interview extended family members to obtain whatever information they may have as to the child's possible Indian status." (*In re K.R.* (2018) 20 Cal.App.5th 701, 709 (*K.R.*).) In considering the prejudicial effect of a social services agency's failure to discharge its duty to inquire under ICWA, this court has repeatedly held that the failure to comply with an initial duty of inquiry is deemed prejudicial in the absence of information in the record to suggest otherwise. (*Ibid*.; *N.G.*, *supra*, 27 Cal.App.5th at p. 484; *Benjamin M*.,

12

*supra*,70 Cal.App.5th at pp. 744-745.)  As this court has previously explained:  "[W]here the record does not show what, if any, efforts the agency made to discharge its duty of inquiry [citations] . . . the burden of making an adequate record demonstrating the court's and the agency's efforts to comply with ICWA's inquiry and notice requirements must fall squarely and affirmatively on the court and the agency. . . .  [A]s a general rule, we will find the appellant's claims of ICWA error prejudicial and reversible."  (*N.G.*, at p. 484.)  This remains true even under our recently articulated standard of prejudice in *Benjamin M*.  (*Benjamin M*., at p. 745 [failure to make an initial inquiry of an extended family member is prejudicial because, "[w]hile we cannot know how [an extended family member] would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue."].)

While we recognize the efforts made by DPSS in sending a letter to the BIA and the various Cherokee tribes, pursuant to the information obtained from the maternal grandmother, the record is devoid of any indication that DPSS made a meaningful effort to locate and interview the maternal grandfather to obtain whatever information he may have as to the child's possible Indian status.  (*K.R.*, *supra*, 20 Cal.App.5th at p. 709.)  Thus, on this record, we conclude mother's claim of ICWA error is prejudicial and reversible.  (*See N.G.*, *supra*, 27 Cal.App.5th at p. 484.)

### DISPOSITION

The order terminating parental rights is conditionally reversed.  The matter is remanded to the juvenile court with directions to comply with the inquiry provisions of ICWA and of Welfare and Institutions Code sections 224.2 and 224.3 – specifically, to

make a meaningful effort to locate and inquire of the maternal grandfather about the child's possible Indian ancestry. Since we remand to require inquiry of maternal grandfather, we also require that ICWA inquiry be made as to maternal aunt. If, after completing the inquiry, neither DPSS nor the juvenile court has reason to believe or reason to know the child is an Indian child, the order terminating parental rights shall be reinstated. If, however, DPSS or the juvenile court discovers a reason to believe that the child is an Indian child, the juvenile court shall proceed as required under ICWA and related California statutes.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:

RAMIREZ
P. J.

CODRINGTON
J.

14