Filed 11/1/16  Certified for Publication 11/29/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re CHARLOTTE V., a Person Coming Under the Juvenile Court Law. | B269633 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JENNIFER C.,<br><br>    Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK81121) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Emma Castro, Commissioner.  Affirmed.

Patrick K. Saucier, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Erica Edelman-Benadon, Deputy County Counsel, for Plaintiff and Respondent.

Jennifer C. (Mother) appeals from the termination of her parental rights over her daughter, Charlotte V., on the ground the juvenile court failed to comply with the strict notice requirements specified in the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.; see also Welf. & Inst. Code, § 224 et seq.) We affirm.

**FACTS**

Charlotte is the daughter of Mother and Mario V. (Father), born in 2011. A juvenile dependency petition was filed on July 3, 2013, alleging Mother and Father endangered Charlotte's physical health and safety, as provided under Welfare and Institutions Code, section 300, subdivision (b). The petition alleged Mother repeatedly rammed her car into Father's while Charlotte was sitting in the back seat of Mother's car on June 27, 2013. Mother also brandished a loaded handgun at Father. The handgun was within Charlotte's reach inside the car. Mother and Father wrestled for the handgun. Father was arrested for concealing a firearm and Mother was arrested for child endangerment.

The juvenile court ordered Charlotte detained and placed with her maternal uncle. Charlotte was ultimately placed with a foster family after the dependency investigator discovered the uncle was allowing Mother to stay with Charlotte after her

release and failing to monitor Mother's contact with her, which violated the court's orders.

The Los Angeles Department of Children and Family Services (DCFS) filed a first amended petition on September 16, 2013, which added allegations that Mother and Father had a history of engaging in violent altercations in Charlotte's presence and that Father had a history of alcohol abuse, rendering him incapable of providing adequate care. Mother and Father filed waivers pleading no contest to the amended petition on November 15, 2013. The juvenile court assumed jurisdiction over Charlotte on November 15, 2013. The court ordered reunification services for both parents, including drug testing and anger management and parenting classes. Over the course of the next 18 months, Mother and Father were irregular in complying with the reunification plan and in visiting with Charlotte, although they were always appropriate during their visits. DCFS recommended terminating reunification services on January 23, 2015. At the contested 12-month review hearing on April 17, 2015, the juvenile court found Mother and Father were not in compliance with the case plan and ordered family reunification services terminated. The juvenile court then set a Welfare and Institutions Code section 366.26 hearing to determine a permanent plan for Charlotte.

DCFS recommended on August 14, 2015, that Mother and Father's parental rights be terminated and Charlotte's foster parents be allowed to adopt her. DCFS noted the foster family had cared for Charlotte since 2013 and Charlotte called them "momm and papi." At the permanent plan hearing on January 7, 2016, the juvenile court found clear and convincing evidence Charlotte was adoptable and that no exception to adoption applied. Mother appealed on January 7, 2016.

## DISCUSSION

Mother challenges the termination of her parental rights on the sole ground DCFS failed to provide sufficient information to the Blackfeet Nation to determine whether Charlotte is an Indian child. Mother contends the termination order should be reversed and the case remanded to ensure compliance with ICWA. We disagree.

## I.    Proceedings Below

Charlotte's Indian ancestry was first addressed in the Welfare and Institutions Code section 300 petition, which noted she may be a member of the Blackfeet Nation. Mother indicated in a parental notification of Indian status that she had Indian ancestry through the Blackfeet Nation and provided a copy of her tribe identification card indicating Mother had membership in the Blackfoot Confederacy through the Ammskapi Pikuni. The card contained Mother's picture, ID number, height, weight, and

4

date of birth.  On the back of the card, it showed Mother's "Blackfeet Blood" quantum to be 7/32 and her "total degree" of Blackfeet ancestry to be 9/32.  Father indicated he had no Indian ancestry.  Charlotte's uncle, Richard Cruz, and cousin, Heather New Robe, reported to DCFS the family was Blackfoot on their mother's side.  As a result, the juvenile court ordered DCFS to investigate Mother's claim and provide the dates and places of birth for Mother's relatives as far back as possible.

A notice of child custody proceeding for Indian Child was sent via certified mail on August 29, 2013, to the Blackfeet Tribe of Montana as well as the Secretary of the Interior and the Bureau of Indian Affairs to inquire about Charlotte's status.  The notice showed Mother's name, address, birth date and place, and tribal affiliation, as well as a copy of her tribe identification card.  It indicated that Mother lived on a reservation or federal trust land in Browning Montana between October 1999 and January 2005.  It also showed Charlotte received her immunizations in an Indian health clinic or U.S. Public Health Service hospital in Browning, Montana.  The notice included the name of  Mother's mother, Rita Devereaux, whom she claimed had Blackfeet ancestry, but no other identifying information.  A subsequent notice added maternal grandfather's name and address as well as maternal uncle's identifying information along with the previously mentioned information.

5

In letters dated September 9 and 26, 2013, the Blackfeet Tribe notified DCFS that it was unable to find Charlotte, Mother, Father, maternal uncle, maternal grandfather, or maternal grandmother in the tribal rolls. The letters were standardized form letters which included a blank space to fill in the names of the individuals searched. According to the letter, Charlotte was not an Indian Child as defined by ICWA. However, it noted that if more ancestry information was forthcoming, the tribe would review the tribal rolls again. At the six-month review hearing held on May 16, 2014, the juvenile court found Charlotte was not an Indian child and ICWA did not apply.

## II.  ICWA

ICWA was enacted "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs." (25 U.S.C. § 1902.)

To that end, specific notice requirements to the applicable tribes are triggered when the juvenile court knows or has reason to know that an Indian child is involved in a dependency proceeding. (25 U.S.C. § 1912(a).)  California law tracks ICWA for

6

all intents and purposes relevant to this case. (Welf. & Inst. Code, §§ 224.2-224.3; *Tina L. v. Superior Court* (2008) 163 Cal.App.4th 262, 266.)

"Notice is a key component of the congressional goal to protect and preserve Indian tribes and Indian families. Notice ensures the tribe will be afforded the opportunity to assert its rights under the Act irrespective of the position of the parents, Indian custodian or state agencies. Specifically, the tribe has the right to obtain jurisdiction over the proceedings by transfer to the tribal court or may intervene in the state court proceedings. Without notice, these important rights granted by the Act would become meaningless." (*In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.) Among other things, notice to potentially affected tribes must include "[a]ll names known of the Indian child's biological parents, grandparents, and great-grandparents, or Indian custodians, including maiden, married and former names or aliases, as well as their current and former addresses, birthdates, places of birth and death, tribal enrollment numbers, and any other identifying information, if known." (Welf. & Inst. Code, § 224.2, subd. (a)(5)(C); 25 C.F.R. § 23.11(d)(3) (2012); see 25 U.S.C. § 1912(a).) Notice requirements are strictly construed and must contain enough information to allow a meaningful review of the tribal records. (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576.)

Under ICWA, no foster care placement or termination of parental rights proceeding may be held until at least 10 days after the tribe receives notice. (25 U.S.C. § 1912(a); see Welf. & Inst. Code, § 224.2, subd. (d).) The Indian tribe determines whether the child is an Indian child, and its determination is conclusive. (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 702.) The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. (*In re Asia L.* (2003) 107 Cal.App.4th 498, 506.)

We review the trial court's findings for substantial evidence. (*In re E.W.* (2009) 170 Cal.App.4th 396, 404.) "'On review of the sufficiency of the evidence, we presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order.' [Citation.]" (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1525.) "Mere support for a contrary conclusion is not enough to defeat the finding [citation]; nor is the existence of evidence from which a different trier of fact might find otherwise in an exercise of discretion [citation]." (*In re H.E.* (2008) 169 Cal.App.4th 710, 724.) Deficiencies or errors in an ICWA notice are subject to harmless error review. (*In re S.B.* (2005) 130 Cal.App.4th 1148, 1162; see also *In re Cheyanne F.*, *supra*, 164 Cal.App.4th at p. 576.)

## III. Analysis

The record here contains substantial evidence of proper notice to the Blackfeet Nation. DCFS provided two notices by certified mail to the tribe containing information about Mother, Father, and Charlotte's grandmother and uncle. The Blackfeet Nation was given a copy of Mother's tribal identification card and number as well as information about Mother's time at the reservation and Charlotte's health care at a health clinic on the reservation. Since Charlotte claims Indian ancestry from Mother, that information would be sufficient for meaningful review. Under federal and state law, additional information regarding Charlotte's grandmother and great-grandparents, from whom Mother claims Indian ancestry, was required to be provided only if known. There is no indication in the record, however, that any other requisite information was known by DCFS and not provided to the tribe. Indeed, DCFS indicated, for the most part, that Charlotte's grandparents' and great-grandparents' information was "unknown" but identified them as affiliated with the "Blackfeet Tribe of Montana." As to Charlotte's maternal grandfather, DCFS listed his tribal affilation as "not applicable."

Yet, Mother contends the notices were deficient because they excluded all information about Charlotte's grandmother, except for her name, and any information about Charlotte's

9

cousin and great-grandparents, all of whom have Indian ancestry. Mother argues DCFS could have gotten this information from Charlotte's grandfather, uncle, and cousin, but failed to do so.

We are not persuaded by Mother's reliance on *In re A.G.* (2012) 204 Cal.App.4th 1390, for the proposition that reversal is required here. In *In re A.G.,* the social services agency admitted it violated ICWA's inquiry and notice requirements. It made no effort to interview family members who were readily available and active participants in the dependency proceedings. (*Id.* at p. 1393.) Here, there is no such admission and instead, the record supports a finding DCFS interviewed Mother's family to determine what information was known to them.

In any event, there is no requirement under ICWA or California law that information about non-lineal ancestors be provided. Thus, DCFS did not violate ICWA by failing to provide the tribe with Charlotte's cousin's information. (25 C.F.R. § 23.11(b) (2003) ["to establish tribal identity, it is necessary to provide as much information as is known on the Indian child's direct lineal ancestors . . ."].) It is unlikely that information about Heather New Robe would establish Charlotte's Indian ancestry when Mother's tribal identification card and member number did not.

10

As to Charlotte's grandmother and great-grandparents, it is speculative to assume Charlotte's grandfather, uncle, or cousin had the detailed information about these individuals required under ICWA. They were very forthcoming about Charlotte's Indian ancestry. Presumably, they would have provided that information if it was known. It is not uncommon for an individual to be unaware of his or her grandparents' or great-grandparents' birthdates or birthplaces or former addresses. Certainly, Mother has given no indication she knows any of this information. Contrary to Mother's assertion, there was no indication the maternal grandfather had any Indian ancestry and his information, although provided in the second notice, was irrelevant to the issue. It is also possible that the maternal grandfather was evasive or uncooperative about his wife's information.

If Mother had raised the ICWA notice issue in the juvenile court, she could have subpoenaed DCFS employees and questioned them about their efforts to elicit the required information from Charlotte's family. In that event, DCFS could have introduced additional evidence to show that it had made an adequate inquiry. However, Mother did not raise the issue below and DCFS now lacks that opportunity. At this point, Mother must take the record as she finds it. The record reveals

11

substantial evidence of ICWA compliance.  We therefore conclude that Mother has not demonstrated any prejudicial error.

### DISPOSITION

The judgment is affirmed.



BIGELOW, P.J.

We concur:


RUBIN, J.


GRIMES, J.

12

Filed 11/29/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re CHARLOTTE V., a Person Coming Under the Juvenile Court Law. | B269633 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. CK81121) |
| Plaintiff and Respondent, | |
| v. | |
| JENNIFER C., | |
| Defendant and Appellant. | |

THE COURT*:

      The opinion in the above entitled matter filed on November 1, 2016, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\* BIGELOW, P. J.        RUBIN, J.        GRIMES, J.