Filed 1/3/23 In re I.H. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re I.H. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080730 |
| Plaintiff and Respondent, | (Super. Ct. No. J520301AB) |
| v. | |
| M.O., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Michael P. Pulos, Judge. Reversed and remanded with directions.

Donna P. Chirco, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

INTRODUCTION

M.O. (Mother) appeals from orders terminating her parental rights to her children, I.H. and J.O (the Children), at the Welfare and Institutions Code section 366.26[1] hearing. Her sole contention on appeal is that the San Diego County Health and Human Services Agency (Agency) did not comply with their inquiry duties under the federal Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA). The Agency concedes that it did not fully comply with its inquiry duties with regards to certain known and available extended family members, and that its inquiries with relevant Native American tribes were deficient and, therefore, agrees that a limited remand is appropriate to ensure compliance with ICWA. On the record before us, we agree with the Agency's concessions. We will conditionally reverse the orders terminating Mother's parental rights and remand the matter with directions for the limited purpose of compliance with ICWA and related statutory provisions.[2]

FACTUAL AND PROCEDURAL BACKGROUND

In March 2020, the Agency filed juvenile dependency petitions alleging the Children were within the jurisdiction of the juvenile court pursuant to section 300. The following day, the Agency filed a detention report that discussed potential Native American ancestry of the Children. The detention

---

[1]     All undesignated statutory references are to the Welfare and Institutions Code.

[2]     In its letter brief conceding the ICWA error, the Agency stated it would prepare a stipulation for immediate remittitur and file it with this court if Mother signed the stipulation. We have not received such a stipulation, but we encourage the parties to stipulate to the immediate issuance of the remittitur in this case. (See Cal. Rules of Court, rule 8.272, subd. (c)(1).)

report documented a conversation between the social worker and Mother, in which Mother stated she was unsure if her family had any Native American heritage, but that no family member was registered to any tribe or lived on a Native American reservation. However, the detention report also discussed prior investigations by the Agency in which Mother reported she was half-Cherokee and claimed the maternal grandmother belonged to a Cherokee tribe. The detention report also documented conversations between the social worker and the father of I.H. and the father of J.O, in which both fathers denied any Native American heritage.

At the detention hearing, Mother and I.H.'s father filed ICWA-20 forms attesting they had, to their knowledge, no Native American ancestry. During the hearing, counsel for Mother and I.H.'s father confirmed that neither parent indicated they had Native American heritage. The juvenile court inquired about prior claims of Cherokee heritage by the maternal grandmother. In response, counsel for Mother and the Agency proffered that both Mother and maternal grandmother presently denied any Native American ancestry. Maternal grandfather was present but no inquiry was made of him.

Based on the representations of the parties claiming a lack of Native American ancestry, the juvenile court found, "[b]ased on the [detention] report and confirmation of all parties of no Native American ancestry, . . . that ICWA does not apply[.]" The court found the Agency made a prima facie showing that the Children were persons described in section 300, subdivision (b), and removed custody of the Children from the parents.

At the contested jurisdiction and disposition hearing, the court took jurisdiction over the Children and ordered family reunification services for the parents. In its jurisdiction and disposition report, the Agency stated

3

ICWA did not apply based on the juvenile court's prior finding at the detention hearing that ICWA was not applicable.

The court terminated reunification services for Mother in December 2020, and set the matter for a contested section 366.26 hearing. The hearing was continued when the Agency requested additional time to conduct further ICWA inquiries related to the Children's extended family members. In response to the juvenile court's inquiry, Mother stated she believed her grandfather had Native American ancestry and her mother had the most information about this heritage. The Agency's counsel represented the Agency intended to follow up with the maternal grandmother regarding potential Native American ancestry.

The Agency filed an addendum report that discussed further ICWA inquiries. The maternal grandmother reported she heard rumors that her grandmother may have been connected to the Cherokee tribe. She further reported that no one in her family had lived on a reservation, received benefits from a tribe, spoke a native language, or was an enrolled member in a tribe. The social worker attempted to contact the maternal grandfather, but the phone number provided was not in service. The social worker also attempted to contact I.H.'s father, but he did not return her phone call.

The Agency also submitted inquiry letters to the Cherokee Nation, the Eastern Band of Cherokee Indians, and the United Keetoowah Band of Cherokee Indians (the tribes). As the Agency concedes, the letters sent to the tribes omitted the names and other identifying information for the maternal grandmother, maternal great-grandmother, and maternal grandfather. Two of the tribes responded that the Children were not eligible for tribal membership, and the third tribe did not respond before the section 366.26 hearing.

4

At the section 366.26 hearing in May 2022, neither Mother nor the Children's fathers were present. The juvenile court found as to both children the "Agency's investigation and further inquiry [was] sufficient, that the court has no reason to know that the child is [a Native American] child and therefore [it found] that the Indian Child Welfare Act does not apply." The court terminated Mother's parental rights to the Children, as well as that of both fathers. Mother timely appealed.[3]

## DISCUSSION

Mother contends the Agency failed to comply with its inquiry duties pursuant to ICWA and section 224.2. Specifically, she contends an inquiry of the maternal grandfather did not occur even though he was present and available for an interview at the detention hearing; the Agency did not conduct the required inquiry of I.H.'s father or his extended family members; and the inquiry letters submitted to the various tribes contained insufficient information because they did not include information pertaining to the maternal grandmother, maternal great-grandmother, or maternal grandfather. We review a juvenile court's ICWA findings for substantial evidence. (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.) Doing so, we accept the Agency's concessions and conclude substantial evidence does not support the juvenile court's ICWA findings.

In California dependency proceedings, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be [a Native American] child." (§ 224.2, subd. (a).) "[S]ection 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the

---

3    Neither father has appealed the juvenile court's section 366.26 orders.

5

statute imposes a duty of inquiry to ask all involved persons whether the child may be [a Native American] child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is [a Native American] child, then the Agency 'shall make *further inquiry* regarding the possible [Native American] status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is [a Native American] child, then the formal notice requirements of section 224.3 apply." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1052.)

The Agency's initial inquiry must include, "but is not limited to, asking the child, parents, legal guardian, [Native American] custodian, [and] extended family . . . whether the child is, or may be, [a Native American] child." (§ 224.2, subd. (b).) ICWA defines " 'extended family member' " by "the law or custom of the [Native American] child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the [Native American] child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].) Extended family members must be interviewed, in addition to the child's parents, because there may be circumstances in which "the parents themselves may have scant information about their ancestry[.]" (*In re Darian R.* (2022) 75 Cal.App.5th 502, 509.)

At the second stage of further inquiry, there is "reason to believe" a child is a Native American child if the Agency has information that suggests the child or parents of the child are a member or may be eligible for membership in a Native American tribe. (§ 224.2, subd. (e)(1).) If the Agency

6

has "reason to believe" a child involved in a dependency proceeding is a Native American child, it must conduct further inquiry by interviewing the child's parents and extended family members. (§ 224.2, subd. (e)(2)(A).) The Agency must also contact tribes that may reasonably be expected to have information regarding the child's membership within the tribe. (§ 224.2, subd. (e)(2)(C).) As part of the Agency's communication with a relevant tribe, the Agency must share information necessary for that tribe to make a determination regarding potential tribal membership of the child. (*Ibid.*)

The Agency concedes its failure to conduct an initial inquiry of the maternal grandfather, who was an available extended family member, violated section 224.2, subdivision (b). It further concedes its inquiry with the tribes were deficient under section 224.2, subdivision (c), because it omitted the names and other identifying information for the maternal grandmother, maternal great-grandmother, or maternal grandfather. Further, although not raised by Mother, the Agency also acknowledged the *juvenile court* failed to conduct the required inquiry with Mother, I.H.'s father, and the maternal grandfather pursuant to section 224.2, subdivision (c), as these individuals were present at the detention hearing. However, the Agency disagrees that its inquiry of I.H.'s father or his extended family members was deficient.

We agree all of the Agency's concessions are proper. In this case, the prior claims of Cherokee heritage by Mother and the maternal grandmother gave the Agency reason to believe the Children had Native American ancestry based on their maternal lineage. The Agency thus had a statutory duty to interview the relevant extended family members of the Children and contact tribes that may reasonably be expected to have information pertaining to the Children's potential tribal membership. (§ 224.2, subd.

7

(e)(2)(A)–(C).)  As the Agency acknowledges, the maternal grandfather was present at the detention hearing, and he was not questioned regarding potential Native American ancestry.  The Agency appropriately concedes the maternal grandfather was an available extended family member under section 224.1, subdivision (c), and was not interviewed as required.  Although the Agency attempted to contact the maternal grandfather by calling an out-of-service phone number, the record does not reflect the Agency took further reasonable steps to contact and interview him.

The record further supports the Agency's concession that the inquiry letters sent to the tribes was deficient under section 224.2, subdivision (e).  While the Agency did appropriately contact the tribes, it failed to include information "necessary for the tribe to make a membership or eligibility determination."  (§ 224.2, subd. (e)(2)(C).)  The inquiry letters should have included available information pertaining to the maternal grandmother, great-grandmother, and maternal grandfather, who were of potential Native American ancestry.

The Agency disagrees with Mother's contention that its inquiry with I.H.'s father was deficient, or that further inquiry with his extended family members was required.  At the detention hearing, I.H's father was present and filed an ICWA-20 form reporting, *to his knowledge*, he had no Native American ancestry.  Counsel for I.H.'s father also informed the court that the father denied Native American ancestry.  In its letter brief, the Agency asserts "his relatives did not avail themselves to the Agency or juvenile court during the case."  Based on the record, we are unable to determine whether I.H.'s extended family members on father's side were known or available to provide readily obtainable information about I.H.'s potential Native American ancestry.  But because the Agency agrees to a limited remand for

8

the Agency to comply with ICWA inquiries with regards to the Children's maternal lineage and concedes the juvenile court failed its inquiry obligation to independently inquire of I.H.'s father, we assume the court and the Agency will fully comply with its inquiry duties under ICWA on remand. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 554 [a parent's mere denial of Native American ancestry is not enough to satisfy the Agency's "broad duty" to ask known and available extended family members about the child's ICWA status]; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 743 ["A parent challenging ICWA compliance cannot always easily obtain the missing information, even when that missing information is about a parent's possible [Native American] ancestry."].)

In sum, we conclude substantial evidence does not support the juvenile court's ICWA findings. We therefore conditionally reverse the orders terminating Mother's parental rights with a limited remand for the Agency to comply with ICWA and section 224.2.

## DISPOSITION

The juvenile court's orders terminating Mother's parental rights is conditionally reversed. The matter is remanded to the juvenile court with directions that the Agency comply with the inquiry provisions of ICWA and section 224.2. If, after Agency compliance with ICWA and section 224.2, the juvenile court finds that no ICWA notice is required to be given, the orders terminating Mother's parental rights shall be reinstated. If, after compliance with section 224.2, the juvenile court finds that ICWA notice is required, the

9

Agency shall comply with its ICWA notice obligations and the juvenile court shall proceed accordingly.

DO, J.

WE CONCUR:

DATO, Acting P. J.

BUCHANAN, J.