Filed 6/20/23  In re Alisha P. CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ALISHA P., a Person Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY DEPARTMENT OF HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> KYLEE B., <br><br> Defendant and Appellant. | A165803 <br><br> (Sonoma County <br> Super. Ct. No. DEP-4986-02) |

Kylee B. (mother) appeals from the juvenile court's order terminating her parental rights over her now six-year-old daughter Alisha P. under Welfare and Institutions Code section 366.26.[1]  She contends the Sonoma County Department of Human Services (Department) failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law (Welf. & Inst. Code, § 224 et seq.) and that the juvenile court erred in finding that ICWA does not apply.  Mother further asserts the juvenile court erred in finding that the

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise stated.

1

parental benefit exception under Welfare and Institutions Code section 366.26, subdivision (c)(1)(B)(i) does not apply. We agree that the Department failed to comply with the inquiry requirements of ICWA and related California law; however, we disagree that the juvenile court erred in determining that the parental benefit exception does not apply. Accordingly, we conditionally affirm the juvenile court's order terminating parental rights and remand for the limited purpose of compliance with ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

We focus on facts relevant to resolution of the ICWA issue and other limited background information to provide relevant context. We provide further relevant facts regarding the parental benefit exception in the discussion section.

Alisha was born in September 2016. Two days after her birth, the Department filed a juvenile dependency petition alleging that Alisha came within the juvenile court's jurisdiction under section 300, subdivision (j). The petition alleged Alisha was at risk of abuse because her half sibling Brody B. was physically abused by Alisha's then alleged father, Ryan P. (father), while in the care of father and mother, and Brody B. was removed from mother's care due to her failure to protect him from father's physical abuse. Mother and father each filed Judicial Council Forms, form ICWA-020, on September 21, 2016, denying any known Indian ancestry. Initially, Alisha was briefly detained from parental custody and then placed back in the care of mother and father while they lived in the home of the paternal grandparents with a safety plan. In October 2016, the juvenile court sustained the petition, declared Alisha a dependent, found that ICWA does not apply, and ordered family maintenance services. The ICWA finding

2

section of the court's order states that mother and father denied Indian heritage and provides no information regarding whether extended family members were questioned. In September 2017, after approximately 12 months of family maintenance services, the juvenile court dismissed the case.[2]

On July 1, 2020, the Department filed the dependency petition at issue in this appeal. It alleged Alisha, who was then three years old, came within the juvenile court's jurisdiction under Welfare and Institutions Code section 300, subdivisions (b)(1), (c), (d), (g) and (j), and that she suffered or was at risk of suffering serious physical harm, serious emotional damage, and sexual abuse in her parents' care. The petition alleged Alisha was at risk of harm due to father's mental illness and self-harming behavior while caring for Alisha; father's physical and sexual abuse of Alisha's half siblings, which resulted in his arrest on June 23, 2020, for felony violations of Penal Code section 288, subdivisions (b)(1) (lewd act on child or dependent person), (a) (lewd act on child under 14 years), and (c)(1) (lewd act on child of 14 or 15 years and at least 10 years older than child), and Penal Code section 243.4, subdivision (a) (sexual battery); and mother's substance abuse, which resulted in her arrest on November 6, 2019, for driving while intoxicated and causing an accident.

---

[2] In the separate proceeding regarding Alisha's half sibling Brody, mother did not reunify with Brody. Mother's parental rights over Brody were terminated in November 2017, and Brody was adopted by his maternal grandparents. A May 9, 2018 status review report regarding Brody's dependency proceeding states that on November 12, 2015, the juvenile court found that ICWA did not apply to Brody. The report provides no details regarding the extent of the ICWA inquiry. The parties do not cite to the actual order in which the ICWA finding regarding Brody was made, and the order does not appear to be part of the appellate record in this matter.

3

The petition included Judicial Council Forms, form ICWA-010(A), stating that the Department made an "Indian child inquiry" and that the child has no known Indian ancestry. Specifically, the Department stated: "[Father] and [mother] were interviewed at their home on September 23, 2016. Both parents reported having no Indian Ancestry. No new information has been provided regarding this matter."

The Department's detention report stated that Alisha had an extra chromosome and might have mild cerebral palsy. She required assistance with walking and used a " 'pacer,' " which was described as similar to a walker. She received physical therapy, occupational therapy and speech services at school and home, where she lived with her paternal grandparents. Mother was no longer living at the home of the paternal grandparents because they told her to leave after several concerning incidents involving mother's negligent driving and then her arrest for DUI. Mother reported she was staying with various friends while she looked for stable housing. Mother visited Alisha at the paternal grandparents' home several times a week.

Regarding ICWA, the detention report stated that the juvenile court previously found, in November 2015, that ICWA does not apply as to mother[3] and that on July 1, 2020, the paternal grandmother "denied any documented Indian Ancestry and denied they were associated with any tribe." On July 2, 2020, father filed Judicial Council Forms, form ICWA-020, checking the box stating "I have no Indian ancestry as far as I know." (Boldface and underscoring omitted.)

---

[3] It appears that the Department's detention report is referencing the juvenile court's prior ICWA finding in the dependency proceeding involving Brody. As noted, the order making the referenced finding does not appear in the appellate record before this court.

4

Mother and father both appeared at the July 2, 2020, detention hearing. The juvenile court detained Alisha. Neither parent was questioned regarding ICWA. The juvenile court stated, "There's information that ICWA does not apply. We will keep this as an open question and readdress it at the jurisdiction." However, the minute order from the July 2, 2020 detention hearing includes a finding that ICWA does not apply.

On July 24, 2020, the Department filed an amended petition pursuant to section 300, subdivisions (b)(1), (d), (g) and (j). The amended petition alleged that father was diagnosed with bipolar disorder and major depressive disorder and engaged in self-harm while caring for Alisha and her half sibling. Additionally, it was alleged that Alisha was at risk of being sexually abused by father, who sexually abused six known victims within the home, including Alisha's half siblings. Father allegedly took lengthy showers with Alisha, who was particularly vulnerable due to her developmental disabilities and delayed speech. The amended petition alleged father had been incarcerated since June 23, 2020. It further alleged that mother had knowledge of the allegations that father sexually abused her son Brody and father's son Ryan and that she failed to protect Alisha from father by continuing to allow her to reside with father and to be with father unsupervised. Mother allegedly also had mental health and substance abuse problems that impaired her ability to make sound judgments and provide regular care and supervision for Alisha. Mother was convicted of DUI based on the incident in November 2019, and she was diagnosed with generalized anxiety disorder, attention deficit disorder, and a genetic disorder that causes developmental disability on a spectrum of severity.

The amended petition again attached Judicial Council Forms, form ICWA-010(A), stating that the Department made an "Indian child inquiry"

5

and that the child has no known Indian ancestry.  The amended petition did not provide any further explanation regarding the scope of the Department's ICWA inquiry.

The July 27, 2020, combined jurisdiction/disposition report stated that ICWA does not apply and that "[t]he Court previously made a finding that ICWA does not apply to Alisha, and no additional information has been received to suggest Alisha is an Indian Child."  It summarized discussions with mother, father, paternal and maternal grandparents, and paternal and maternal aunts, but it did not state that any of them was questioned regarding ICWA.  Alisha was placed with her paternal grandparents, but the Department was assessing placement with other relatives.  At the time of the report, Alisha was staying with her paternal aunt while the paternal grandparents traveled out of state.  The report recommended sustaining the amended petition and offering mother and father reunification services.

On July 29, 2020, at the combined jurisdiction/disposition hearing, mother and father submitted to jurisdiction.  Neither parent was questioned at the hearing regarding ICWA.  The juvenile court sustained the amended petition, removed Alisha from the parents' custody, and ordered reunification services.

The Department's status report in advance of the six-month review hearing recommended that reunification services to mother be continued but that reunification services to father be terminated due to his guilty plea to felony charges of sexual battery and incest.  The Department reported that Alisha was placed with her paternal aunt in Santa Rosa and that mother was living and working in Fort Bragg.  Regarding ICWA, the report repeated the statement that the court previously found that ICWA does not apply and no additional information had been received.  The report did not state that the

6

Department questioned any of Alisha's extended family regarding ICWA. At the six-month review hearing on January 20, 2021, the juvenile court continued reunification services for mother. On February 24, 2021, the juvenile court terminated reunification services for father. No ICWA issues were raised at either of the hearings in January and February 2021.

The Department's July 7, 2021, status report recommended termination of reunification services as to mother and the setting of a section 366.26 hearing. The Department reported that mother was not consistently attending Alisha's medical and therapy appointments. Mother also failed to timely sign Alisha's individualized education program agreement on multiple occasions, as well as other documents necessary for Alisha to obtain additional therapy services for her disability. Mother also failed to complete her psychological evaluation and random drug testing. The report repeated the Department's prior statements regarding ICWA and did not contain any information about extended family members being questioned regarding possible Native American ancestry.

The Department filed an addendum report on October 29, 2021, in which it again recommended termination of reunification services and the setting of a section 366.26 hearing. The addendum report contained no information regarding ICWA; however, the Department's proposed findings stated that ICWA does not apply. A contested 12-month review hearing was held on October 29, 2021, and November 9, 2021. The juvenile court adopted the proposed findings, terminated reunification services for mother, and set a section 366.26 hearing.

On February 14, 2022, the Department filed a section 366.26 report recommending termination of parental rights and a permanent plan of adoption. The Department reported the potential adoptive parents are

Alisha's paternal great-aunt and her husband, who live in Oregon. The Department was awaiting home approval for the proposed adoptive parents. The report contained the same information regarding ICWA as the prior reports.

On February 25, 2022, April 6, 2022, and June 9, 2022, the Department filed addendum reports containing the same recommendations. The addendum reports did not mention ICWA. The June 9, 2022 report stated that the potential adoptive parents were approved for placement and were planning to move Alisha into their home in mid-June 2022.

The juvenile court held the section 366.26 hearing on June 17, 2022. The paternal grandfather briefly appeared, before the juvenile court excluded him from the proceedings after minor's counsel objected to his presence. The juvenile court did not question the paternal grandfather regarding ICWA. The court considered and rejected mother's argument that the parental benefit exception applied. It terminated parental rights as to both parents and ordered adoption as Alisha's permanent plan.

## DISCUSSION

### I. *ICWA Inquiry*

Mother contends the Department failed to conduct an adequate initial ICWA inquiry because it did not inquire of Alisha's extended family members other than her paternal grandmother. She further argues the error was not harmless under the standards used in *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744–745 (*Benjamin M.*), and *In re K.H.* (2022) 84 Cal.App.5th 566, 608–611, 620. The Department concedes that the duty of inquiry requires it to contact extended family members about possible Indian ancestry; however, it contends any error was harmless because mother, father and the paternal grandmother denied any Indian ancestry. As

8

explained, on this record, where multiple extended family members were contacted by the Department but apparently never questioned regarding ICWA, we do not believe the error was harmless.[4]

ICWA establishes minimum federal standards that a state court must follow before removing an Indian child from his or her family. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.) California incorporated ICWA's requirements into its statutory law. (*Ibid.*) Section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. (*In re D.S.*, at p. 1052.)

The first duty is the initial duty to inquire, which is "an affirmative and continuing duty" imposed on both the juvenile court and the Department. (§ 224.2, subd. (a).) Section 224.2, subdivision (b) provides that if a child is removed from his or her parents and placed in the custody of the Department, the Department has a duty to inquire whether the child is an Indian child, and the inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." California Rules of Court, rule 5.481(a)(5), provides that the petitioning agency "must on an ongoing basis include in its filings a detailed description of all inquiries,

---

[4] Alisha's prospective adoptive placement is with her paternal great-aunt and her husband. The Department does not argue that ICWA inquiry error is harmless because Alisha's proposed adoptive placement is with extended relatives. Accordingly, we do not address this issue. (See *In re Oscar H.* (2022) 84 Cal.App.5th 939, 938–939, 941 [majority finds placement with extended family does not prove ICWA inquiry error is harmless because a proper ICWA inquiry could have resulted in the case "follow[ing] a different path with a different outcome"]; *id.* at p. 941 (dis. opn. of Stratton, P. J.) [dissent finds harmless error because "[t]he minor is not in danger of being separated from his biological family, the evil ICWA was enacted to prevent"].)

9

and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. . . ."

The juvenile court is also required to make an ICWA inquiry. (§ 224.2, subd. (c).) "At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

The duty of further inquiry arises when the Department or the juvenile court has "reason to believe" the proceedings involve an Indian child but "does not have sufficient information to determine that there is reason to know that the child is an Indian child . . . ." (§ 224.2, subd. (e).) A "reason to believe" exists if the agency or the juvenile court "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).) If the Department or the juvenile court has a "reason to believe that an Indian child is involved in a proceeding," the court or the Department must "make further inquiry," which includes interviewing the parents and extended family members and contacting the Bureau of Indian Affairs for assistance in identifying the tribes in which the child may be a member or may be eligible for membership. (§ 224.2, subd. (e), (e)(2).)

Finally, if the inquiry gives the Department or the juvenile court a "reason to know" the child is an Indian child, then notice pursuant to ICWA must be sent to the pertinent tribes. (§ 224.2, subd. (f).)

"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings." (*In re*

10

*Charlotte V.* (2016) 6 Cal.App.5th 51, 57.) If the juvenile court finds "that proper and adequate inquiry, further inquiry, and due diligence were conducted under . . . section 224.2 and, if applicable, notice provided under . . . section 224.3, and the court determines there is no reason to know the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings." (Cal. Rules of Court, rule 5.482(c)(1); § 224.2, subd. (i)(2).) Any such finding must be reversed by the juvenile court "if it subsequently receives information providing reason to believe that the child is an Indian child," and the juvenile court must then "order the social worker . . . to conduct further inquiry under . . . section 224.3." (Cal. Rules of Court, rule 5.482(c)(2).)

Here, the record indicates that although the Department had contact with multiple extended family members, including the paternal grandfather, a paternal aunt, a paternal great-aunt, the maternal grandparents, and a maternal aunt, it only ever questioned mother, father, and the paternal grandmother regarding ICWA. Thus, the initial inquiry was inadequate. (§ 224.2, subd. (b).)

Appellate courts are currently divided regarding the proper prejudice standard to apply to such errors, and the issue is currently pending in the Supreme Court. (See *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578.) The Department argues that we should follow *In re A.C.* (2022) 75 Cal.App.5th 1009 and *In re Dezi C., supra*, 79 Cal.App.5th 769, rev.gr., and find the error harmless because nothing in the record, nor any proffer on appeal, contains information suggesting a reason to believe Alisha is an Indian child. We decline to follow this approach. As explained in *Benjamin M.*, "[r]equiring a parent to prove that the missing information would have demonstrated 'reason to believe' would effectively impose a duty

on that parent to search for evidence that the Legislature has imposed on only the agency." (*Benjamin M., supra*, 70 Cal.App.5th at p. 743.) The Department's contention that we should find no prejudice because there is no evidence that any extended family member had any information pertaining to whether Alisha has Indian heritage misses the point. On this record, we cannot know what information Alisha's extended relatives may have. Nothing suggests any of them (excepting the paternal grandmother) was ever asked about potential Indian ancestry either in the current dependency proceeding or in the prior dependency proceeding initiated in 2016.

We find the inadequate initial inquiry is not harmless. (*In re Y.W.* (2021) 70 Cal.App.5th 542, 556.) The Department's initial inquiry duty expressly requires that it interview extended family members. (§ 244.2, subd. (b); see *In re H.V.* (2022) 75 Cal.App.5th 433, 438–439 [conditionally affirming and remanding disposition order with directions to interview extended family members].) The information from the extended family members is likely to be at least meaningful in determining whether Alisha is an Indian child. (See *In re Antonio R.* (2022) 76 Cal.App.5th 421, 426, 435 ["In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child, regardless of whether the information ultimately shows the child is or is not an Indian child"]; *In re A.C., supra*, 75 Cal.App.5th at pp. 1016, 1018 [finding prejudice and remanding for ICWA compliance where extended family members were not interviewed]; *In re K.H., supra*, 84 Cal.App.5th at p. 610 [finding that "where the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard"].)

12

Accordingly, we remand for ICWA compliance.

## II.    *Termination of Parental Rights*

Mother claims the juvenile court erred when it terminated her parental rights and found the parental benefit exception inapplicable.  We find no error.

### A.    Legal Framework

At a section 366.26 hearing, the juvenile court selects a permanency plan for the dependent child.  (§ 366.26, subd. (b).)  At this stage of the proceedings, if the juvenile court finds by clear and convincing evidence that the child is likely to be adopted, "the court shall terminate parental rights and order the child placed for adoption."  (§ 366.26, subd. (c)(1).)  However, section 366.26, subdivision (c) provides certain enumerated exceptions which permit the juvenile court, " 'in exceptional circumstances [citation], to choose an option other than the norm, which remains adoption.' "  (*In re Caden C.* (2021) 11 Cal.5th 614, 631 (*Caden C.*).)  The exception relevant here is the parental benefit exception.  (§ 366.26, subd. (c)(1)(B)(i).)  To prove this exception applies, the parent must establish "(1) regular *visitation and contact*, (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*Caden C.*, at p. 631.)  As to the first element, the juvenile court considers whether the parent visits consistently, "taking into account 'the extent permitted by court orders.' "  (*Id.* at p. 632.)  As to the second element, the court assesses whether the child has a "substantial, positive, emotional attachment to the parent . . . ."  (*Id.* at p. 636.)  In making this determination, the proper focus is on the child, and the court may consider factors such as " '[t]he age of the child, the portion of the child's life spent in the parent's

13

custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Id.* at p. 632.)

Regarding the third element, the juvenile court decides "whether the harm of severing the relationship outweighs 'the security and the sense of belonging a new family would confer.' " (*Caden C., supra*, 11 Cal.5th at p. 633.)  As explained by the Supreme Court, the juvenile court is not comparing the parent's attributes as custodial caregiver to those of the potential adoptive parents.  Instead, "the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Id.* at p. 634.)

### B.     Standard of Review

*Caden C., supra*, clarified that determinations regarding the parental benefit exception are reviewed under a hybrid standard of review.  (11 Cal.5th at pp. 639–640.)  As to the first two elements, which are factual determinations, the reviewing court applies a substantial evidence standard of review.  (*Ibid.*)  The third element—whether termination of parental rights would be detrimental to the child—is reviewed for abuse of discretion.  (*Id.* at pp. 640–641.)  An abuse of discretion occurs only when " ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination.' " ' " (*Id.* at p. 641.)  If two or more inferences can reasonably be deduced from the facts, the reviewing court may not substitute its judgment as to what is in the child's best interests.  (*Ibid.*)

14

### C. Analysis

#### 1. <u>Consistent Visitation</u>

The juvenile court found that mother met the first element of the parental benefit exception in that she consistently visited Alisha. This finding is not contested on appeal.

#### 2. <u>Significant, Positive, Emotional Attachment</u>

The juvenile court found that Alisha does not have a substantial emotional attachment to her mother. The juvenile court considered the Department's reports, which included summaries of the supervised visits between mother and Alisha. The Department's reports included the social worker's observations that although Alisha enjoyed the visits, she did not seem upset when visits ended and did not ask for additional visits or video calls with mother. The social worker reported that Alisha was generally receptive to attention of others, a trait observed by Alisha's teacher, day care provider, and caregiver, and the social worker. According to the social worker's observations, Alisha's relationship with mother was like that of a "friendly visitor" and Alisha's emotional attachment to her mother did not appear to be significant. Mother did not offer any testimony or other evidence regarding the relationship between her and Alisha.

The court commented on the *Caden C.* analysis of the parental benefit exception and properly considered the fact that Alisha, who was then five years old, had been out of mother's care for more than one-third of her life. It also properly considered Alisha's special needs and found that Alisha looked to her caregivers to understand and help her with her physical and emotional issues. (*Caden C., supra*, 11 Cal.5th at p. 632.) The juvenile court found that although mother and Alisha have a loving relationship, "the question goes deeper than that." The court stated that Alisha was bonded to her

15

caregivers, who met her needs, and found that she did not have a substantial emotional attachment to mother.

Mother argues the juvenile court erroneously considered three improper factors when it found that Alisha does not have a substantial emotional attachment to mother. She asserts it was improper for the juvenile court to (1) compare the caregiving provided by Alisha's caregivers to that of mother; (2) consider Alisha's attachment to her caregivers and potential adoptive parents; and (3) consider whether Alisha's needs would be met in her prospective adoptive home. We disagree that the juvenile court relied on improper factors in determining whether Alisha had a positive, substantial, emotional attachment to mother. *Caden C.* explains that in assessing whether a child will benefit from continuing the relationship with the parent, the focus is on the child and "the relationship may be shaped by a slew of factors, such as '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between the parent and child and the child's particular needs.'" (*Caden C., supra*, 11 Cal.5th at p. 632.)[5]

On review, the question before us is whether substantial evidence supports the trial court's determination that Alisha did not have a substantial emotional attachment to her mother. (*Caden C., supra*, 11 Cal.5th at pp. 639–640.) Mother points to evidence that her interactions with Alisha were positive and " 'very sweet,' " that Alisha was excited to see

---

[5] *Caden C.*'s comments cautioning against comparing the parent with the caregiver or potential adoptive parents relate to the third element of the parental benefit exception, where a court must weigh whether termination would be detrimental to the child against the benefits of a new, adoptive home. (*Caden C., supra*, 11 Cal.5th at pp. 634–635.) We discuss the detriment finding in further detail *post*.

mother and called her "mommy," and that they told each other they loved each other. However, we do not reweigh the evidence and must uphold the juvenile court's factual determinations if they are supported by substantial evidence, even if substantial evidence to the contrary also exists. (*Id.* at p. 640.) Moreover, the evidence mother cites does not show the level of substantial emotional attachment required by the parental benefit exception. "A positive attachment between parent and child is necessarily one that is not detrimental to the child but is nurturing and provides the child with a sense of security and stability," and "an emotional attachment is one where the child views the parent as more than a mere friend or playmate and who's [*sic*] interactions with the parent were not ambivalent, detached, or indifferent." (*In re B.D.* (2021) 66 Cal.App.5th 1218, 1230.) Evidence that Alisha enjoyed visits with mother is not enough to prove the kind of emotional attachment required by the parental benefit exception. (See, e.g., *In re Helen W.* (2007) 150 Cal.App.4th 71, 81 [finding parental benefit exception did not apply where evidence showed mother cared for young children during visits and they called her " 'Mom' " yet spent most of their lives out of mother's custody]; *In re Jason J.* (2009) 175 Cal.App.4th 922, 938 [exception did not apply despite evidence parent was loving with child but where there was no evidence child had "type of emotional attachment . . . that would cause him to be greatly harmed if parental rights were terminated]; *In re Autumn H.* (1994) 27 Cal.App.4th 567, 571–573, 575–576 [exception does not apply despite evidence of friendly visits between parent and child].) We find substantial evidence contained in the Department's reports supports the juvenile court's finding that Alisha did not have a substantial, positive, emotional attachment to mother. (*Caden C.*, at p. 636.)

17

### 3. Detriment/Benefit Balance

The juvenile court determined that termination of parental rights would not be detrimental to Alisha and that any harm from severing the relationship would not outweigh the benefits of adoption. We find no abuse of discretion. (*Caden C., supra*, 11 Cal.5th at p. 641 [third element reviewed for abuse of discretion].)

Mother's argument that the juvenile court improperly compared the caregiving of mother with that of Alisha's caregivers and her potential adoptive parents oversimplifies the issue. *Caden C.* explains that when a juvenile court determines whether termination would be detrimental to a child, "the court is not comparing the parent's attributes as custodial caregiver relative to those of any potential adoptive parent(s)." (*Caden C., supra*, 11 Cal.5th at p. 634.) Instead, "the question is just whether losing the relationship with the parent would harm the child to an extent not outweighed, on balance, by the security of a new, adoptive home." (*Ibid.*) *Caden C.* notes the juvenile court "must . . . engage in a delicate balancing . . . [that] weigh[s] the harm of losing the relationship against the benefits of placement in a new, adoptive home." (*Id.* at p. 640.)

We find the juvenile court properly exercised its discretion in balancing the harm to Alisha from termination of parental rights against the benefits of an adoptive home. The juvenile court weighed Alisha's positive relationship with mother—although it found it not to be a substantial emotional attachment—against her attachment to her caregiver and her potential adoptive parents, who were able to meet her needs. The Department reported that Alisha appeared excited to move to her potential adoptive parents' home. Alisha was comfortable and happy in her caregivers' home and was thriving from the structure, guidance, and consistent attention to

18

her special needs. The court properly considered that Alisha's special needs will be met in the home of her potential adoptive parents. (*Caden C., supra*, 11 Cal.5th at p. 632.) The social worker opined that adoption would provide Alisha with the love, care and stability needed to overcome obstacles related to her special needs. She further opined that Alisha's relationship with mother was not "the substantial, positive, emotional relationship . . . that would outweigh the stability and permanency of adoption." On these facts, we do not find that the juvenile court acted outside the bounds of its legal discretion in determining that any harm from terminating mother's parental rights would not outweigh the benefits of placement in an adoptive home.

## DISPOSITION

The order terminating parental rights is conditionally affirmed and remanded to the juvenile court for the limited purpose of ensuring compliance with the inquiry provisions of Welfare and Institutions Code section 224.2 and, if necessary, the notice provisions of section 224.3. The juvenile court shall order that within 30 days of the issuance of the remittitur, the Department complete an inquiry investigation into the child's Indian ancestry by interviewing available extended family members. If, on remand, the juvenile court determines that ICWA does not apply, the termination order shall remain in effect. If the court determines ICWA applies, it shall vacate the termination order and proceed in accordance with ICWA and related state law.

 

 

_____
                          Jackson, P. J.

WE CONCUR:

_____
Burns, J.

_____
Chou, J.*

A165803/*Sonoma County Dept. of Human Services v. Kylee B.*

---

     * Judge of the Superior Court of San Mateo County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.