Filed 8/10/23  In re O.J. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

|  |  |
|---|---|
| In re O.J. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E080830 |
| Plaintiff and Respondent, | (Super. Ct. No. SWJ1900401) |
| v. | OPINION |
| T.H., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat and Dorothy McLaughlin, Judges.  Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K.B. Beecham, and Catherine E. Rupp, Deputy County Counsels, for Plaintiff and Respondent.

1

# I.

# INTRODUCTION

T.H. (Mother) appeals from the juvenile court's order terminating her parental rights to her minor children, Ola.J. and Oly.J.[1] Mother contends that the Riverside County Department of Public Social Services (DPSS) failed to comply with the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related state law. Finding no prejudicial error, we affirm the order.[2]

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *First Prior Dependency Involving O.J.*

The family originally came to the attention of DPSS in May 2019 due to neglect of the children's sibling, then four-year-old O.J. DPSS's investigation revealed that both parents abused methamphetamine and marijuana and that both parents had mental health issues. At the time, Mother was pregnant and lost the baby at 31 weeks when she prematurely delivered due to her substance abuse. DPSS obtained a warrant and brought O.J. into protective custody in July 2019. DPSS contacted multiple relatives and family

---

[1] Neither the father of the children, Ot.J. (Father), nor the children's siblings are parties to this appeal.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2

friends to assess them for possible placement of O.J., including maternal aunt D.H. and paternal aunts E.V. and L.D.

DPSS noted that ICWA does or may apply. Father reported that he was "50% Cherokee Indian." Father stated he was not a registered tribal member but that the paternal grandfather may be a registered member. Mother denied having any Native American ancestry.

On July 15, 2019, Mother filed an ICWA-020 Parental Notification of Indian Status (ICWA-020) form, denying that she had any Indian ancestry. On the same date, Father filed an ICWA-020 form, indicating that he was a tribal member, or that he may be eligible for membership in the Cherokee tribe and the Blackfoot tribe.

At the July 15, 2019 detention hearing, in response to the juvenile court's query, Mother again indicated that she did not have any Native American ancestry, and Father maintained that he believed he may have Indian ancestry through the Cherokee tribe or Blackfoot Nation. The court ordered DPSS to follow-up on Father's claim of Indian ancestry.

On September 6, 2019, DPSS sent ICWA-030 Notice of Child Custody Proceeding for Indian Child (ICWA-030) notice to the Cherokee Nation of Oklahoma, the Eastern Band of Cherokee Indians, the United Keetoowah Band of Cherokee, the Blackfeet Tribe of Montana, and the Bureau of Indian Affairs (BIA) regarding O.J. The ICWA-030 notice included Mother and Father's names, current and former addresses, birthdate and place of birth, and tribe or band names; the maternal and paternal

3

grandparents' names, current and former addresses, birthdates and places of birth, and tribe or band names; and the maternal and paternal great-grandparents' names, former addresses, birthdates and places of birth, tribe or band names, and dates and places of death. The notice noted that the tribal membership or enrollment number was "unknown." In the additional information section for Father, DPSS indicated that the social worker had spoken with paternal aunt E.V. and paternal grandfather to obtain additional information about the family's Native American ancestry.

On September 20, 2019, DPSS again sent ICWA-030 notices to the relevant tribes and the BIA. This notice provided substantially the same information as provided in the original ICWA-030 notice, however this time DPSS stated that the social worker had only spoke with paternal aunt E.V. about the family's heritage.

On September 25, 2019, the Eastern Band of Cherokee Indians responded that O.J. was not registered or eligible to register as a member of the tribe. The Blackfeet and Cherokee Nation tribes both later responded to DPSS's ICWA notices indicating O.J. was not an Indian child or eligible for enrollment.

The juvenile court took jurisdiction on October 9, 2019, after it sustained the dependency petition pursuant to Welfare and Institutions Code[3] section 300, subdivision (b) (failure to protect). The court found that ICWA notice was proper, declared O.J. a dependent of the court and ordered the parents to participate in reunification services.

---

[3] All future statutory references are to the Welfare and Institutions Code unless otherwise stated.

4

DPSS met with Father multiple times in Spring 2020, and Father denied that he had any new information about his Native American ancestry.

Due to the parents progress in their case plan, in April 2020, O.J. was placed with the parents under a family maintenance plan, and dependency jurisdiction over O.J. was terminated in October 2020. Meanwhile, Mother had given birth to sibling Or.J. in May 2020 and the child remained in the parents' care.

B. *Second Prior Dependency Involving O.J. and Or.J.*

The family again came to the attention of DPSS in May 2021 after a referral was received alleging then six-year-old O.J. and then 11-month-old Or.J. were victims of general neglect due to domestic violence between the parents and the parents' unresolved mental health issues. This time, Mother reported that she may have Indian ancestry with an unknown tribe. She denied being registered with a tribe or receiving any benefits. Father stated that he had Cherokee and Choctaw ancestry and that both the paternal and maternal side of his family were from Louisiana. Father informed the social worker of his grandparents' names.

In July 2021, DPSS obtained a protective custody warrant to remove the children from parental custody and filed a section 300 dependency petition on behalf of both children due to the parents' domestic violence, unresolved mental health issues, history of abusing controlled substances, and Father's incarceration. Mother refused to meet in-person with DPSS to surrender the children.

5

DPSS attached an ICWA-010(A) Indian Child Inquiry Attachment (ICWA-010(A)) form to the petition. The form indicated that the social worker had questioned Mother and Father about their Native American ancestry, and the inquiry gave the social worker reason to believe the children were or might be Indian children. The form identified the Choctaw and Cherokee tribes.

The detention hearing was held on July 27, 2021. Mother and the children were not present in court, but Father was present in custody. The juvenile court detained the children from parental custody and issued new protective custody warrants for each child. The court also issued a bench warrant for Mother. Prior to the detention hearing, Father filed an ICWA-020 form indicating Choctaw and Cherokee ancestry, and the court acknowledged Father had filed the form at the detention hearing. The court formally detained the children from parental custody, found DPSS had conducted a sufficient inquiry regarding the children's Native American ancestry and that the ICWA may apply to the proceedings.

On August 9, 2021, DPSS sent an electronic "further inquiry" letter to the relevant tribes. DPSS also sent each tribe a hard copy of the "further inquiry" letter via certified mail. The "further inquiry" letter contained the names and date of birth of the children's parents and both paternal and maternal grandparents, great grandparents, paternal aunts, and paternal great-great grandparents.

On August 10, 2021, the children were located and placed with their paternal aunt V.J. On the same date, the juvenile court recalled and quashed Mother's arrest warrant. On this day, Mother reported that she has Native American ancestry with the Choctaw Nation and Cherokee Nation.

On August 10, 2021, the Choctaw Nation of Oklahoma and the Cherokee Nation of Oklahoma each responded that they were unable to determine the children shared any heritage with the respective tribe.

On August 20, 2021, the Mississippi Band of Choctaw Indians responded that neither the children nor their parents were enrolled members of the tribe, nor were they eligible for enrollment. On August 23, the Blackfeet tribe responded that the children were not listed on the tribal rolls and did not qualify as Indian children. On August 24, the Eastern Band of Cherokee Indians responded that Or.J. was not on the tribal registry and was not eligible to register as a member of the tribe. On November 3, 2021, the Cherokee Nation responded that O.J., Or.J. and their parents could not be located on the tribal records, and the children were not "Indian children" in relation to their tribe.

At the jurisdiction/disposition hearing on August 17, 2021, the parents each filed a waiver of rights. The juvenile court sustained the allegations in the petition, declared the children dependents of the court and ordered the parents to participate in reunification services. The court found that DPSS had conducted a sufficient inquiry regarding ICWA, and determined ICWA did not apply and that the children O.J. and Or.J. were not Indian children.

7

On November 16, 2021, Mother, who was again pregnant, tested positive for amphetamine, methamphetamine and marijuana. Mother failed to attend her drug tests scheduled for December 7 and December 15, 2021.

C. *Current Dependency Involving Ola.J. and Oly.J.*

In December 2021, Mother gave birth to the children at issue in the current appeal: twins Ola. and Oly. (also known as Oli.). The children were born prematurely at 33 weeks. Mother tested positive for marijuana and amphetamines at delivery. Mother denied that she had used methamphetamine during her pregnancy and claimed the hospital had given her "'something to test positive.'" She further asserted that she had not used methamphetamine in two years and denied that she had any mental health concerns. She stated that she did not take her medication for bipolar and schizophrenia because the medication likely caused her to test positive for methamphetamine. DPSS obtained a protective custody warrant and took the twins into protective custody.

On January 4, 2022, DPSS filed a section 300 dependency petition on behalf of the twins based on Mother's substance abuse and mental health issues, the parents open dependency case for the older siblings, Father's inability to care for the children due to his incarceration in prison for two years, and Father's criminal history. The attached ICWA-010(A) form indicated that DPSS had interviewed Mother on December 28, 2021, and the inquiry gave no reason for the social worker to suspect that the children were or may be Indian children. Father reported that he has Choctaw and Cherokee ancestry and provided the names of the paternal grandparents.

8

Mother was present at the detention hearing, but Father was not transported. The juvenile court formally detained the children from both parents. The court found that DPSS had conducted an adequate inquiry into the children's Native American ancestry, there was reason to know the children may have Indian ancestry and that ICWA may apply to the proceedings. The court ordered DPSS to provide notice to all identified tribes and the BIA. Mother was ordered to complete an ICWA-020 form.

On January 12, 2022, Father stated his family ancestry contains Choctaw and Cherokee ancestry, and that Mother was "holding on to his registration card." On the same date, Mother reiterated that she may have Native American heritage through the Blackfeet and "Chacha" tribe and that she was not registered with any tribe.

On January 19, 2022, DPSS sent a "further inquiry" letter to the Cherokee Nation, the Blackfeet Nation, and the Choctaw Nation containing the twins' information, however Oly. was referred to under her birth name of Oli. The letter contained the names and date of birth of the children's parents and both paternal and maternal grandparents, great grandparents, paternal aunts, and paternal great-great grandparents.

On January 20, 2022, DPSS filed a tribal response letter from the Cherokee Nation. The letter indicated Ola. and Oly. were not registered tribal citizens with the Cherokee Nation and were not "Indian children" in relation to that tribe. On this same date, DPSS filed a tribal response letter from the Choctaw Nation of Oklahoma indicating that the tribal ICWA specialist was unable to determine any heritage with the tribe in regard to the twins.

9

On February 10, 2022, DPSS filed a first amended petition that corrected Oly.'s name from "Oli[.]" to "Oly[.]"

On February 16, 2022, DPSS filed a tribal response from the United Keetoowah Band of Cherokee Indians and the Mississippi Band of Choctaw Indians. Both tribes stated that the twins were not Indian children in relation to the respective tribe.

On February 17, 2022, DPSS sent a "further inquiry" letter to the relevant tribes using Oly.'s correct name. DPSS filed tribal response letters from the tribes. The Eastern Band of Cherokee Indians, Cherokee Nation of Oklahoma, Jena Band of Choctaw Indians, the United Keetoowah Band of Cherokee Indians, the Choctaw Nation of Oklahoma, and the Blackfeet Tribe all responded stating that Ola. and Oly. were not Indian children, were not registered members of the tribe, and were not eligible for membership.

DPSS recommended that the juvenile court sustain the allegations in the first amended petition, declare Oly. and Ola. dependents of the court, bypass reunification services for the parents, and find ICWA did not apply to the twins. DPSS also asked the court to find that ICWA did not apply to siblings O.J. and Or.J., that reunification services be terminated for the parents in the older children's case, and that a section 366.26 hearing be set.

The combined six-month review hearing in the older children's case and the contested jurisdiction/disposition hearing in the twins' case was held on March 29, 2022. Mother did not appear, and Father was not transported to the hearing. In Ola. and Oly.'s

10

case, the court sustained the allegations in the first amended petition and set a date for the contested disposition hearing. The court found DPSS had conducted a sufficient inquiry into Ola. and Oly.'s Native American ancestry, that ICWA did not apply and that the children were not Indian children.

As to the older children, the court also found that ICWA did not apply to O.J. and Or.J., that DPSS had conducted a sufficient inquiry and that there was no new information to indicate ICWA may apply. The court further found that the parents had failed to regularly participate and make substantive progress in their case plan, terminated the parents' reunification services in the older children's case and set a section 366.26 hearing.

The contested disposition hearing in Ola. and Oly.'s case was held on May 11, 2022. Mother was present, but Father was not transported for the hearing. The juvenile court declared the twins a dependent of the court, bypassed services for the parents under section 361.5, subdivision (b)(10), and set a section 366.26 hearing.

In June 2022, DPSS reported that "[t]he paternal aunts, L[.] [D.] and V[.] [J.], state that there is Native ancestry through the father, O[.] J[.]. However, they do not know if any relatives are registered for a tribe. The family lineage is through [Father's] mother, L[.] [R.]."

The section 366.26 hearing in Ola.'s and Oly.'s case was held on February 6, 2023. Neither parent appeared. The juvenile court found the twins adoptable, terminated parental rights and designated the children's caregivers as their prospective adoptive parents. Mother timely appealed.

## III.

## DISCUSSION

Mother argues that the order terminating parental rights as to the twins must be conditionally reversed because the juvenile court failed to ensure DPSS discharged its duty of inquiry under ICWA-related state law. Specifically, she asserts that there is no record DPSS inquired of a maternal aunt, a maternal cousin and the paternal grandparents about the children's Indian status, even though these relatives were known and available for interview, and that this lack of inquiry was prejudicial error.

DPSS acknowledges the record reveals that it does not appear the maternal aunt, maternal cousin, or paternal grandmother were interviewed. They, however, argue the lack of interview of extended relatives was harmless error because DPSS repeatedly provided paternal and maternal relatives' information to the tribes identified by both parents and the tribes repeatedly responded the parents and children were not registered members, nor were they eligible for membership.

12

A. *Governing Law*

"ICWA establishes minimum federal standards that a state court must follow before removing Indian children from their families. [Citation.] California law implementing ICWA also imposes requirements to protect the rights of Indian children, their families, and their tribes." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*); §§ 224-224.6; see *In re Abbigail A.* (2016) 1 Cal.5th 83, 91 ["persistent noncompliance with ICWA led the Legislature in 2006 to 'incorporate[] ICWA's requirements into California statutory law'"].) "An Indian child is any unmarried person under 18 who 'is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.' (25 U.S.C. § 1903(4); see § 224.1, subd. (b).)" (*Ricky R.*, *supra*, at p. 678.)

Typically, it "is not self-evident whether a child is an Indian child," so "both federal and state law mandate certain inquiries to be made in each case." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741.) "'"""Federal regulations implementing ICWA . . . require that state courts "ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." [Citation.] The court must also "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child."'"" [Citations.] 'State law, however, more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing

13

duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child.""" (*In re J.C.* (2022) 77 Cal.App.5th 70, 77.)

Under California law, the juvenile court and county child welfare department have "an affirmative and continuing duty to inquire" whether a child subject to a section 300 petition may be an Indian child. (§ 224.2, subd. (a); see *In re D.F.* (2020) 55 Cal.App.5th 558, 566; *Ricky R.*, *supra*, 82 Cal.App.5th at p. 678; *In re Isaiah W.* (2016) 1 Cal.5th 1, 14 ["juvenile court has an affirmative and continuing duty in all dependency proceedings to inquire into a child's Indian status"].) "This continuing duty can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice." (*In re D.F.*, *supra*, at p. 566.)

The juvenile court must inquire at each party's first appearance, whether any participant in the proceeding "knows or has reason to know that the child is an Indian child." (§ 224.2, subd. (c).) Part of the initial inquiry also includes requiring each party to complete California Judicial Council form ICWA-020, Parental Notification of Indian Status. (Cal. Rules of Court, rule 5.481(a)(2)(C).) In addition, when an agency takes a child into temporary custody, the agency must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child," and the reporting party whether the child is or may be an Indian child. (§ 224.2, subd. (b).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers-or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

When the initial inquiry gives the juvenile court or the department "reason to believe that an Indian child is involved," (§ 224.2, subd. (e)) the court and social worker must conduct further inquiry to "determine whether there is reason to know a child is an Indian child." (§ 224.2, subd. (e)(2); see *In re J.S.* (2021) 62 Cal.App.5th 678, 686.) The department "does not discharge their duty of further inquiry until they make a 'meaningful effort' to locate and interview extended family members and to contact BIA and the tribes.'" (*In re K.T.* (2022) 76 Cal.App.5th 732, 744.) At this stage, contact with a tribe "shall, at a minimum," include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of ICWA notice, and "sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (§ 224.2, subd. (e)(3).)

Finally, if the further inquiry """"results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply."""" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78, italics omitted; accord, *Ricky R.*, *supra*, 82 Cal.App.5th at p. 679 ["The duty to provide notice arises only if [the agency] or the court 'knows or has reason to know that an Indian child is involved.'"]; 25 U.S.C. § 1912(a); § 224.3, subd. (a).) Federal regulations define the grounds for reason to know that an Indian child is involved (25 C.F.R. § 23.107(c)(1)-(6)), and state law conforms to that definition (§ 224.2, subd. (d)(1)-(6)).

A "reason to know" exists under any of the following circumstances:  "(1) A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child[;]  [¶]  (2) The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village[;] (3) Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child[;] (4) The child who is the subject of the proceeding gives the court reason to know [he or she] is an Indian child[;] (5) The court is informed that the child is or has been a ward of a tribal court[; and]  [¶]  (6) The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe."  (§ 224.2, subd. (d).)

"Notice enables the tribes 'to determine whether the child involved in a dependency proceeding is an Indian child and, if so, whether to intervene in, or exercise jurisdiction over, the matter.'"  (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.)  The notice must include enough information for the tribe to "conduct a meaningful review of its records to determine the child's eligibility for membership" (*In re Cheyanne F.* (2008) 164 Cal.App.4th 571, 576), including the identifying information for the child's biological parents, grandparents, and great-grandparents, to the extent known (*In re Francisco W.* (2006) 139 Cal.App.4th 695, 703; § 224.3, subd. (a)(5)(C)).

16

"The juvenile court must determine whether proper notice was given under ICWA and whether ICWA applies to the proceedings. [Citation.]" (*In re Charlotte V.* (2016) 6 Cal.App.5th 51, 57.) "'"If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."'" (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78.) A juvenile court finding that ICWA is inapplicable generally implies that the department and court have fulfilled their duty to inquire. (See *In re Austin J.* (2020) 47 Cal.App.5th 870, 885 [a finding that "ICWA does not apply" implies social workers and court "did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry"].) We review ICWA findings for substantial evidence, but "where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051; see *In re A.M.* (2020) 47 Cal.App.5th 303, 314.)

B. *Analysis*

In this case, we agree with the parties that the record does not specifically disclose whether DPSS inquired of all ascertainable and known relatives, specifically the maternal aunt and paternal grandmother. Initially, contrary to Mother's claim, the record discloses DPSS did interview the paternal grandfather concerning the children's Indian ancestry. The record affirmatively demonstrates that DPSS had inquired of Mother, Father,

17

paternal grandfather, and several paternal aunts. Second, there is no requirement that DPSS interview Mother's cousin (maternal cousin). Rather, as previously noted, extended family members include *adults* who are the *child's* stepparents, grandparents, siblings, brothers-or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).) Mother does not claim that DPSS failed to interview the children's first or second cousin, rather her cousin. In any event, we find any error to be harmless.

An error is one of state law, and requires reversal only upon a showing of prejudice. (*In re S.S.* (2022) 75 Cal.App.5th 575, 582.) In assessing prejudice, this court has examined whether "'the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child.'" (*Ibid.*, quoting *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744; see also *In re Darian R.* (2022) 75 Cal.App.5th 502, 509 [applying test for prejudice from *Benjamin M.*]; *In re A.C.* (2022) 75 Cal.App.5th 1009, 1017 [assessing whether there was "readily obtainable information that was likely to bear meaningfully on whether A.C. was an Indian child"].)

In *In re Darian R.*, *supra*, 75 Cal.App.5th 502, the Court of Appeal rejected the mother's claim that failure to interview her sister and father, with whom she had lived during part of the dependency proceedings, was prejudicial where both parents denied Indian ancestry, mother was under a court order to provide information relevant to ICWA, there was no evidence mother was estranged from her family, and a prior court

order in an earlier dependency case involving the same biological parents found ICWA inapplicable. (*Id*. at p. 510.) Under these circumstances, the court concluded, "The record simply does not support mother's unvarnished contention that additional interviews of mother's father and sister would have meaningfully elucidated the children's Indian ancestry." (*Ibid*.)

In *In re Adrian L.* (2002) 86 Cal.App.5th 342, the appellate court similarly found additional inquiry would not have yielded information that was likely to bear meaningfully on whether the child was an Indian child. (*Id*. at p. 345.) In *Adrian L.*, both mother and father denied Indian ancestry, and both completed forms so indicating. (*Id*. at p. 349.) The appellate court rejected the argument that inquiring of maternal grandmother, paternal grandmother, or paternal aunt would have yielded information likely to bear meaningfully on the court's ICWA determination. (*Id*. at p. 345.) The court relied on evidence that the mother and the father had contact with their families and the mother unsuccessfully urged the juvenile court to place the child with the maternal grandmother and paternal aunt, who also sought placement. (*Id*. at p. 352.) Yet, despite an "incentive to bring to the juvenile court's attention facts suggesting that a child is an Indian child," neither the maternal nor the paternal relatives did so. (*Ibid*.)

In contrast, in *In re A.C.*, *supra*, 75 Cal.App.5th 1009, the appellate court held a failure to interview extended family members was prejudicial because, although both parents had signed ICWA forms indicating neither had Indian ancestry, "mother was the product of foster care and thus may not have known her cultural heritage." (*Id*. at pp.

1015-1016.) Also, the detention report had indicated the child might be an Indian child. (*Id.* at p. 1016.) The court "[could not] conclude from this equivocal record that DCFS's failure to conduct *any* inquiry as to mother and father's extended family members was not prejudicial." (*Ibid.*)

Like in *Adrian L.* and *Darian R.*, and unlike in *A.C.*, the record in this case lacks affirmative indications that remand for further inquiry would yield meaningful additional information about the children's ancestry. DPSS had interviewed Mother, Father, the paternal grandfather, and paternal aunts. DPSS's initial and further inquiry disclosed that both Mother and Father may have Indian ancestry through the Cherokee, Blackfeet or Choctaw tribes. And, pursuant to the juvenile court's order, DPSS repeatedly sent formal notices to the relevant tribes and the BIA. The ICWA notices included complete relevant information, including the names, addresses and dates and places of birth, for Mother, Father, the maternal and paternal grandparents, and the maternal and paternal great-grandparents. The notices also identified the tribes claimed by the parents. DPSS also sent "further inquiry" emails and letters to the tribes, providing them with the correct name for Oly. or further information. The "further inquiry" letter contained the names and date of birth of the children's parents and both paternal and maternal grandparents, great grandparents, paternal aunts, and paternal great-great grandparents. The Cherokee Nation, the Cherokee Nation of Oklahoma, the Mississippi Band of Choctaw Indians, the Jena Band of Choctaw Indians, the Choctaw Nation of Oklahoma, the Blackfeet Tribe, and the United Keetoowah Band of Cherokee Indians all responded that neither the

20

parents nor the children were tribal members or eligible for membership and that the children were not "Indian children" in relation to the respective tribes.

There is no indication to suggest further inquiry of the maternal relatives and the paternal grandmother would yield a different result. Mother does not claim the ICWA notices were inadequate, deficient or incomplete. And there is no indication that the maternal relatives and/or the paternal grandmother would have provided any different information than the other numerous relatives who had seemingly provided sufficient information for DPSS to send out adequate notices and "further inquiry" letters. In other words, there is no indication that the maternal relatives and the paternal grandmother would have provided information likely to bear meaningfully on the court's ICWA determination.

Mother's argument that DPSS should have inquired of the maternal relatives and the paternal grandmother does not support the conclusion that it was prejudicial not to inquire. Even if DPSS had inquired of these relatives, such inquiry would not have provided meaningful information on the question of whether the children were Indian children given the overwhelming information otherwise. The fact that DPSS had contact information for these relatives does not support the inference these relatives would have shed meaningful light on the children's status as Indian children given the ICWA-030 notices and "further inquiry" letters sent to the tribes and the tribes responses to the notices and letters.

IV.

DISPOSITION

The order terminating parental rights as to Ola.J. and Oly.J. is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON _____

J.

We concur:

RAMIREZ _____

P. J.

FIELDS _____

J.

22